360 S.E.2d 221

**Robert Dennis McCLUNG**

v.

**MARION COUNTY COMMISSION.**

No. 16604.

Supreme Court of Appeals of West Virginia.

July 17, 1987.

---

James H. Hearst, Fairmont, Franklin Cleckley, Morgantown, for appellant.

J. Montgomery Brown, Pros. Atty's Office, Fairmont, for appellee.

McHUGH, Justice:

This action is before this Court upon appeal by Robert Dennis McClung, the plaintiff/appellant, from a final order of the Circuit Court of Marion County, West Virginia, setting aside the jury's verdict for the appellant and entering a judgment for the Marion County Commission, the defendant/appellee. After reviewing the petition for appeal, the briefs of the parties and the record, we reverse and reinstate the jury's verdict.

## I

### A. *The Facts*

The appellant was employed by the appellee as the dog warden for Marion County, West Virginia, from August 9, 1978 to March 17, 1981. By statute a county commission is authorized to appoint and employ a county dog warden for an indefinite term to enforce the statutory provisions respecting the control and registration of dogs and the impounding, care or destruction of unlicensed dogs.[1] The appellant's employment contract was oral. At the time he was hired he was furnished a written job description. According to the job description, he was to answer emergency calls consisting only of bite cases and injured animals. The evidence at trial indicated, however, that the appellant's duties also included responding to calls after his regular hours in cases involving the capture of unlicensed dogs running loose without having bitten anyone or being injured. The job description also set forth that the appellant was to maintain contact with the animal shelter at least every two hours. The appellee provided the appellant with a "beeper" so that he could receive messages at any time. A telephone answering service would "page" him over his "beeper."

The appellant's regular hours of employment were 8:00 a.m. to 4:00 p.m., Monday through Friday. He contended at trial, though, that he was on call seven days a week, twenty-four hours per day and testified that he responded to at least thirty-two calls after his regular hours during the two and one-half years he was employed as the county dog warden.[2] During most of his employment as the county dog warden, he lived adjacent to the animal shelter in a

1. *W.Va.Code*, 19–20–6(a), as amended, provides in material part:

 (a) The county commission of each county may appoint and employ a county dog warden, and such number of deputies, for such time, and at such compensation, as such county commission shall deem reasonable and necessary to enforce the provisions of this Code with respect to the control and registration of dogs, the impounding, care and destruction of unlicensed dogs.... The county dog warden or any deputies may, in the discretion of the county commission, be regularly employed officers or agents of any humane society or society for the prevention of cruelty to animals, organized and operating under the laws of this State and owning, controlling and operating a suitable place within the county for impounding and destroying dogs....

 The county dog warden and his deputies shall patrol the county in which they are appointed and shall seize on sight and impound any dog more than six months of age found not wearing a valid registration tag, except dogs kept constantly confined in a registered dog kennel. They shall be responsible for the proper care and final disposition of all impounded dogs.... When any dog shall have been seized and impounded, the county dog warden shall forthwith give notice to the owner of such dog, if such owner be known to the warden, that such dog has been impounded and that it will be sold or destroyed if not redeemed within five days....

2. The appellant did not comply with the requirement contained in the job description that he keep a daily log of calls answered, mileage, disposition of complaint and time spent on calls.

residence furnished rent-free by the humane society in exchange for the appellant's cleaning the dog pens and being available to answer the humane society's telephone after regular business hours.[3] While living next to the animal shelter, he was furnished a county vehicle to perform his duties. After being forced by the humane society to change residences, the appellant was expected to use his own vehicle to perform his duties. It was suggested to him that *he* pay someone to "cover for him" when he could not respond to calls because of transportation problems or other reasons. After inquiring about his entitlement to overtime wages, the appellant was the only employee at the animal shelter who was required to punch a time clock.

The appellant was compensated at the rate of $5.29 per hour when hired and at the rate of $6.11 per hour when discharged. A county personnel policy memorandum indicated that the appellant was entitled to compensatory time off, if overtime hours were worked.

There was evidence that the appellant had failed to keep in contact with the animal shelter at least every two hours as required. There was conflicting evidence about whether the appellant failed to respond to three particular calls. The telephone answering service had no record of those calls. He was suspended for five days without pay for missing those three calls. He was warned that any further complaints against him would result in an automatic termination.

On the last day of his suspension the appellant brought an action in the Circuit Court of Marion County for overtime wages, pursuant to the provisions of *W. Va. Code,* 21–5C–8 [1975].[4]

Within a few days after the appellant brought his action for overtime wages, the appellee terminated the appellant's employment for his "failure to comply with the working procedures" of the appellee. The appellant was given no prior notice and opportunity to be heard. On three previous occasions he had been given the opportunity to respond to charges about his job performance.

After receiving notice of termination of his employment, the appellant, at the suggestion of one of the members of the appellee, filed a written request for a "grievance" hearing as provided by the appellee's personnel policy memorandum. Thereafter, however, the appellee's administrative assistant, demonstrating a remarkable grasp of sophistry, notified the appellant by letter that the appellant was not entitled to a grievance hearing because a grievance hearing could be requested only by an employee, and the appellant was no longer an employee at the time that he had requested a grievance hearing.

The appellant subsequently amended his complaint in the action for overtime wages by adding claims based upon denial of procedural due process and retaliatory discharge.

### B. *Trial Proceedings*

At trial the appellant proceeded on the three theories of recovery: (1) violation of

---

**3.** The telephone at the appellant's residence adjacent to the animal shelter was listed in the humane society's, not the appellant's, name.

**4.** *W. Va. Code,* 21–5C–8 [1975] provides in material part:

(a) Any employer who pays an employee less than the applicable wage rate to which such employee is entitled under or by virtue of this article shall be liable to such employee for the unpaid wages; an agreement by an employee to work for less than the applicable wage rate is hereby declared by the legislature of West Virginia to be against public policy and unenforceable.

(b) Any person whose wages have not been paid in accord with this article, or the commissioner or his designated representative, upon the request of such person, may bring any legal action necessary to collect a claim under this article. With the consent of the employee, the commissioner shall have the power to settle and adjust any claim to the same extent as might the employee.

(c) The court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant....

(d) In any such action the amount recoverable shall be limited to such unpaid wages as should have been paid by the employer within two years next preceding the commencement of such action. Nothing in this article shall be construed to limit the right of an employee to recover upon a contract of employment.

the state overtime wage statute, (2) denial of procedural due process based upon a lack of opportunity to be heard about his job performance and (3) retaliatory discharge. The retaliatory discharge claim was two-pronged. First, the appellant claimed that the appellee discharged him in retaliation for his having filed the action for overtime wages. Second, the appellant claimed that the appellee discharged him in retaliation for his having complained about discriminatory treatment of citizens and falsification of records.[5]

At the close of the appellant's case the trial court "reserved on the record" the appellee's motion for directed verdict. At the close of all of the evidence the appellee failed to orally request a directed verdict but did timely file a written motion for directed verdicts on the procedural due process and retaliatory discharge claims. The trial court submitted the case to the jury. The appellant had requested that special interrogatories on each of the three theories of recovery be submitted to the jury. The trial court denied this request. The appellee did not join in this request for special interrogatories.

The jury returned a verdict for the appellant, awarding him $40,000 compensatory damages and $35,000 punitive damages. The trial court entered a judgment in accordance with the verdict.

The appellee timely filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The grounds assigned for a new trial were that the verdict was contrary to the weight of the evidence and that the damages were clearly excessive. The trial court did not rule explicitly upon the new trial motion but did set aside the jury's verdict and the judgment thereon and entered a judgment for the appellee. The trial court was of the opinion that the appellant was an employee at will and that the evidence did not support his retaliatory discharge claim. The trial court was also of the opinion that the damages awarded were clearly excessive and constituted "an undeserved windfall" to the appellant. The trial court stated that the appellant had not performed his job properly and had brought embarrassment to his employer. Finally, the trial court stated that although the appellant was terminated in a manner which "was lacking in the basic elements of due process," it would be a "miscarriage of justice" to allow the verdict to stand.

## II

### A. Substantive Issue—Liability for Retaliatory Discharge

The appellee's discharge of the appellant in this case was unlawful if it was in violation of the appellant's rights under the *Constitution of West Virginia* to petition for redress of grievances and to have the courts of this State open to him for an alleged injury to his person, property or reputation.[6] In addition to these constitutional implications, the statutory law of this State on minimum wages and maximum hours recognizes the public policy of protecting an employee against discharge or discrimination by the employer in retaliation for the employee's pursuing his or her civil remedies to obtain wages in accordance with the state minimum wage and maximum hour laws.[7]

5. The discriminatory treatment concerned the humane society's refunding fees which the appellant had collected from a certain dog owner so that she could "redeem" unlicensed dogs which the appellant had seized. The humane society refunded the fees because its director believed that the appellant should not have seized the dogs inasmuch as they were found near their owner and her land. The falsification of records concerned the humane society's director's recording certain dogs as dead on arrival at the animal shelter, when they were in fact "put to sleep" within a few days after arrival. The humane society's director responded that he had falsified the records in this manner so that the dog owners would not know that their dogs had suffered for a significant period of time with severe injuries.

6. *W.Va. Const.* Art. III, § 16 provides in pertinent part: "The right of the people ... to apply for redress of grievances, shall be held inviolate." *W.Va. Const.* Art. III, § 17 provides in pertinent part: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; ..."

7. *W.Va.Code,* 21–5C–7(a) [1971] provides:
(a) Any employer who wilfully discharges or in any manner wilfully discriminates

■ Case law also provides this protection. A public officer or public employee, even one who serves at the will and pleasure of the appointing authority, may not be discharged in retribution for the exercise of a constitutionally protected right, unless a substantial governmental interest outweighs the public officer's or public employee's interest in exercising such right. *See Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708, 716–17 (1983); syl. pt. 2, *Woodruff v. Board of Trustees*, 173 W.Va. 604, 319 S.E.2d 372 (1984), and cases cited at 377; syl. pt. 3, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984).[8] Stated succinctly, "[o]ur responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; ..." *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708, 720 (1983).

■ One of the fundamental rights of an employee is the right not to be the victim of a "retaliatory discharge," that is, a discharge from employment where the employer's motivation for the discharge is in contravention of a substantial public policy:

The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy princip[le], then the employer may be liable to the employee

for damages occasioned by this discharge.

Syl., *Harless v. First National Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978) (*Harless I*). Certainly it is in contravention of substantial public policies for an employer to discharge an employee in retaliation for the employee's exercising his or her state constitutional rights to petition for redress of grievances (*W.Va. Const.* Art. III, § 16) and to seek access to the courts of this State (*W.Va. Const.* Art. III, § 17) by filing an action, pursuant to *W.Va. Code*, 21–5C–8 [1975], for overtime wages.

*Harless I* was followed by *Harless v. First National Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982) (*Harless II*). In *Harless II* we held that a victim of a retaliatory discharge, in addition to recovering lost wages, may recover damages for emotional distress (syllabus point 3) and, where there is wanton, willful or malicious conduct by the defendant(s), punitive damages (syllabus point 5).

■ In a retaliatory discharge action, where the plaintiff claims that he or she was discharged for exercising his or her constitutional right(s), the burden is initially upon the plaintiff to show that the exercise of his or her constitutional right(s) was a substantial or a motivating factor for the discharge. The plaintiff need not show that the exercise of the constitutional right(s) was the only precipitating factor for the discharge. The employer may de-

---

against any employee because such employee has made complaint to his employer, or to the commissioner, that he has not been paid wages in accordance with the wage and hour provisions of this article, or because such employee has instituted or is about to institute any civil action, or file any petition or criminal complaint against the employer by reason of the provisions of this article, or because such employee has testified or is about to testify in any administrative proceeding, civil action, or criminal action under this article, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than five hundred dollars.

**8.** *See also Prince v. Bridges*, 537 F.2d 1269, 1272 (4th Cir.1976); *Wilderman v. Nelson*, 467 F.2d

1173, 1176 (8th Cir.1972); *Theard v. United States Army*, 653 F.Supp. 536, 545 (M.D.N.C.1987); *Dixon v. Osman*, 22 Ariz.App. 430, 432, 528 P.2d 181, 183 (1974); *Abel v. Cory*, 71 Cal.App.3d 589, 595, 139 Cal.Rptr. 555, 557 (1977), *hearing denied*, Sept. 8, 1977; *Dendor v. Board of Fire & Police Commissioners*, 11 Ill. App.3d 582, 588–89, 297 N.E.2d 316, 321 (1973); *De Bleecker v. Montgomery County*, 292 Md. 498, 506, 438 A.2d 1348, 1352–53 (1982); *Battaglia v. Union County Welfare Board*, 88 N.J. 48, 58, 438 A.2d 530, 535 (1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d·490 (1982); *Curle v. Ward*, 59 A.D.2d 286, 288–89, 399 N.Y.S.2d 308, 310 (1977), *modified on other grounds*, 46 N.Y.2d 1049, 389 N.E.2d 1070, 416 N.Y.S.2d 549 (1979). *See generally Developments in the Law—Public Employment*, 97 Harv.L.Rev. 1611, 1738–70, 1779–80 (1984).

feat the claim by showing that the employee would have been discharged even in the absence of the protected conduct. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977); syl. pt. 4, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984); *Whalen v. Roanoke County Board of Supervisors,* 769 F.2d 221, 224 (4th Cir. 1985), *rev'd on other grounds on reh'g en banc,* 797 F.2d 170 (4th Cir.1986).

A case which is very analogous to the case now before this Court is *Whalen v. Roanoke County Board of Supervisors,* 769 F.2d 221 (4th Cir.1985), *rev'd on reh'g en banc,* 797 F.2d 170 (4th Cir.1986). In that case the plaintiff, a former county engineer, brought a retaliatory discharge action against a county executive and other county officials. There was evidence that the plaintiff had been discharged from employment because he had exercised his constitutionally protected right of freedom of speech. As a private citizen appearing before the State Corporation Commission, he had voiced his opposition to certain electric power lines being constructed. When asked his occupation, he had replied that he was employed by Roanoke County as an engineer. The defendant county executive was angered by the fact that the plaintiff had not clarified that the views which had been expressed by the plaintiff were his own, not those of Roanoke County. The defendant county executive discharged the plaintiff but, upon the advice of counsel, soon thereafter reinstated him.

On the other hand, there was also evidence that the plaintiff had acted as a real estate agent while serving as a county engineer. Other realtors complained to the county executive that the plaintiff as a county engineer had to review subdivision plans and might give preferential treatment to subdivisions developed by his realty company. The county executive ordered the plaintiff to surrender his real estate license to avoid the appearance of a conflict of interest. While winding up his real estate practice, the plaintiff received a, commission. The county executive discharged

the plaintiff. A grievance panel reinstated him. Two hours later, the county executive fired the plaintiff again, this time for "failure to discharge his responsibilities on behalf of Roanoke County." The retaliatory discharge action ensued.

The jury returned a verdict for the plaintiff, awarding compensatory and punitive damages.[9] The jury had answered special interrogatories in this manner: the testimony of the plaintiff before the State Corporation Commission was a substantial or motivating factor in the discharge; the plaintiff would not have been discharged without such testimony; and the defendant county executive acted maliciously or in bad faith in discharging the plaintiff.

The trial court granted the defendant county executive's motion for judgment notwithstanding the verdict. The trial court noted that nearly three years had elapsed between the plaintiff's testimony before the State Corporation Commission and his discharge in question. The trial court therefore concluded that, as a matter of law, the plaintiff's testimony before the State Corporation Commission was not a substantial or motivating factor in the discharge.

The original panel of the Court of Appeals disagreed. It was of the opinion that the three-year interval went to the weight to be given to the evidence but did not permit the trial court to grant, as a matter of law, a motion for judgment notwithstanding the verdict. The original panel of the Court of Appeals held that the evidence in the case before it, involving mixed motives for discharge, was sufficient to defeat a motion for judgment notwithstanding the verdict. The court observed that such a motion, unlike a motion for a new trial, does not permit the trial court to weigh the evidence. The original panel of the Court of Appeals concluded that the case turned upon the motive for the discharge, and that was a jury question. "Determination of motive is a function peculiarly within the province of the fact finder, because so much depends on the opportunity to appraise the antagonists as they testify. A

**9.** The opinion is silent as to the amount of damages.

finding of motive should not be set aside by the reviewing court unless the evidence clearly compels rejection." 769 F.2d at 225–26.

Finally, the original panel of the Court of Appeals in *Whalen* held as follows on the substantive issue as to liability for a retaliatory discharge: "Whalen's right to comment on a matter of public concern outweighs Roanoke County's interest in promoting the efficiency of public service." 769 F.2d at 225.[10]

■ Similarly, in the case now before us, on the substantive issue as to liability for a retaliatory discharge, we hold that the appellant's right to bring an action for overtime wages outweighs the appellee's interest in promoting the efficiency of public service. We also hold that there was sufficient evidence as to a retaliatory discharge to survive a motion for judgment notwithstanding the verdict. See subsection III.A. of this opinion *post.*

### B. *Substantive Issue—Punitive Damages for Retaliatory Discharge*

■ As stated previously, this Court in syllabus point 5 of *Harless II* held that punitive damages may be recovered in a retaliatory discharge case where the defendant's conduct was wanton, willful or malicious.[11] *See also Whalen v. Roanoke County Board of Supervisors,* 769 F.2d 221, 224 n. * (4th Cir.1985), *rev'd on other grounds on reh'g en banc,* 797 F.2d 170

(4th Cir.1986); *Donahue v. Staunton,* 471 F.2d 475, 482 (7th Cir.1972), *cert. denied,* 410 U.S. 955, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973). The jury in the case now before us was properly instructed in accordance with *Harless II* on the issue of punitive damages. There was sufficient evidence to support the jury's finding that the appellee's conduct was so egregious as to make it liable for punitive damages. *W.Va.Code,* 21–5C–7(a) [1971] provides that the willful discharge of or willful discrimination against an employee in retaliation for, *inter alia,* filing an action for overtime wages is criminal conduct. See note 7 *ante.* In this case, then, as in *Wells v. Smith,* 171 W.Va. 97, 297 S.E.2d 872 (1982), one of the infrequently encountered factors supporting an award of punitive damages, specifically unprosecuted criminal conduct, was present:

> [C]riminal conduct warranting punishment often escapes the notice or interest of the public prosecutor. Citizens faced with an under-zealous prosecutor should not be left without avenue for redress of injuries, particularly in light of our case law which recognizes that punitive damages serve to vindicate the victims of the defendant's wrongful conduct and provide a substitute for personal revenge. It should also be recognized that beyond the personal vindication of the plaintiff, punitive damages also serve the interests of society. This concept is inherent in the deterrent function of punitive damages. Moreover, beyond deterrence, punitive damages also serve to vindicate

---

10. The original panel of the Court of Appeals remanded the *Whalen* case for the trial court to reconsider a new trial motion under proper standards. The trial court had denied the same because it perceived no error in the conduct of the trial. The original panel of the Court of Appeals concluded that the trial court should have also decided on the motion for a new trial whether the verdict was contrary to the weight of the evidence.

On rehearing en banc, the en banc panel of the Court of Appeals for the Fourth Circuit reversed the opinion of the original panel. The per curiam opinion of the en banc panel was based upon the reasoning of the opinion of Ervin, J., concurring in part and dissenting in part, as part of the original panel. That opinion relied primarily upon the premise that the record showed only a mere possibility that the discharge was in retaliation for the exercise of

the constitutional right of free speech. The jury's answers to the special interrogatories, however, established that the exercise of such constitutional right was a substantial or a motivating factor in the discharge *and that the discharge would not have occurred without the same.*

11. Syllabus point 5 of *Harless v. First National Bank,* 169 W.Va. 673, 289 S.E.2d 692 (1982) (*Harless II*), states in its entirety:

> Because there is a certain open-endedness in the limits of recovery for emotional distress in a retaliatory discharge claim, we decline to automatically allow a claim for punitive damages to be added to the damage picture. We do recognize that where the employer's conduct is wanton, willful or malicious[,] punitive damages may be appropriate.

societal interests. And this is especially true in a case such as this where the tortious act of the defendant rises to the level of criminal conduct which has gone unprosecuted.

171 W.Va. at 104–05, 297 S.E.2d at 879–80 (citations omitted). Finally, as quoted previously, the determination of motive, such as whether the defendant in a retaliatory discharge case acted wantonly, willfully or maliciously, "is a function peculiarly within the province of the fact finder, ..." *Whalen v. Roanoke County Board of Supervisors*, 769 F.2d 221, 225–26 (4th Cir.1985), *rev'd on other grounds on reh'g en banc*, 797 F.2d 170 (4th Cir.1986).

### C. *Substantive Issue—Reasonable Attorney's Fees*

█ In syllabus point 3 of *Sally-Mike Properties v. Yokum*, No. 16987 (W.Va. June 12, 1986), this Court held: "There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." In the case now before us there was sufficient evidence of wanton, willful or malicious conduct to support the jury's finding of liability for punitive damages. Similarly, there was sufficient evidence of bad faith, vexatious, wanton or oppressive conduct to support an award of reasonable attorney's fees. Moreover, an award of reasonable attorney's fees is particularly appropriate in this case given the constitutional implications of the appellee's conduct. *Allen v. State Human Rights Commission*, 174 W.Va. 139, 166, 324 S.E.2d 99, 127 (1984). Accordingly, we hold that the appellant is entitled to recover his reasonable attorney's fees.

### III

### A. *Procedural Issue—Sufficiency of Evidence*

In this case there was conflicting evidence as to the appellee's motive for discharging the appellant. The appellee's evidence indicated that the discharge was due to poor job performance, particularly the appellant's failure to keep the appellee posted as to his whereabouts so that he could be reached for emergency calls. On the other hand, the appellant's evidence indicated that the discharge was in retaliation for the appellant's filing an action for overtime wages. The jury returned a verdict in favor of the appellant.

In syllabus point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), this Court summarized the tests for appraising the sufficiency of the evidence to support the jury's verdict:

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

*Accord*, syl. pt. 4, *West Virginia Department of Highways v. Roda*, 177 W.Va. 383, 352 S.E.2d 134 (1986) (motion for new trial); *Hardman Trucking, Inc. v. Poling Trucking Co.*, 176 W.Va. 575, 578–579, 346 S.E.2d 551, 555 (1986) (motion for new trial); syl. pt. 2, *Miami Coal Co. v. Hudson*, 175 W.Va. 153, 332 S.E.2d 114 (1985) (motion for directed verdict and motion for new trial).

These particular tests are virtually the same as the tests for deciding a motion for judgment notwithstanding the verdict. *See* M. Lugar and L. Silverstein, *West Virginia Rules of Civil Procedure* 376, 379–80 (1960). A motion for judgment notwithstanding the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is sufficient conflicting evidence, or insufficient evidence to conclusively establish the movant's case, judgment notwithstanding the verdict should not be granted. In considering the motion, the trial court and the appellate court must view the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury's verdict.

5A J. Moore and J. Lucas, *Moore's Federal Practice* ¶ 50.07[2] (2d ed. 1986).

 Applying these tests to the evidence herein, we conclude that there was sufficient evidence to support the jury's verdict on the issue of retaliatory discharge. The timing of the discharge (shortly after the appellant's filing of the action for overtime wages); the fact that the notice of discharge was so vague as to the reason(s) for termination of the appellant's job; the fact that the appellant was not given an opportunity to respond to charges about his job performance, whereas he had been given the opportunity to so respond on three prior occasions; the fact that the appellee's witnesses could not recall any particular post-suspension missed calls by the appellant; and other circumstantial evidence, together with the jury's opportunity to judge the credibility of the witnesses, all support a finding that the appellant's filing of the action for overtime wages was a substantial or a motivating factor for the discharge and a finding that the quality of the job performance was merely a pretext for discharging the appellant for filing the action for overtime wages. While the evidence would also support the contrary finding that the appellant was discharged for poor job performance, the trial court, on a motion for judgment notwithstanding the verdict, was not entitled to substitute its opinion for the opinion of the jury on evidence giving rise to inferences about which reasonable minds could differ.

 A motion for judgment notwithstanding the verdict pursuant to *W.Va. R.Civ.P.* 50(b) provides the trial court with an opportunity, after the jury has been discharged, to reconsider its previous refusal to grant a motion for a directed ver-

dict made at the close of all of the evidence.[12] The same factors as to the sufficiency of the evidence which are examined in deciding a motion for a directed verdict apply also when ruling upon a motion for a judgment notwithstanding the verdict. Accordingly, in a case where the evidence is such that the jury could have properly found for either party upon the factual issues, a motion for judgment notwithstanding the verdict should not be granted. *Morgan v. Bottome*, 170 W.Va. 23, 24, 289 S.E.2d 469, 470 (1982). *Accord*, M. Lugar and L. Silverstein, *West Virginia Rules of Civil Procedure* 379–80, 375 (1960).

Finally, the action of the trial court in setting aside a jury verdict, while entitled to peculiar weight on appeal, will, nevertheless, be reversed where a consideration of all of the evidence clearly shows a proper case for jury determination. *See* syl. pt. 1, *Utter v. United Hospital Center, Inc.*, 160 W.Va. 703, 236 S.E.2d 213 (1977). Such is the case here.

### B. *Procedural Issue—Multiple Theories of Recovery*

 The case herein went to the jury on a claim for overtime wages and on a claim of denial of procedural due process, as well as on a claim of retaliatory discharge. The plaintiff/appellant's request that special interrogatories on each of the three theories of recovery be submitted to the jury was denied by the trial court. The defendant/appellee did not join in this request. The jury returned a general verdict for the plaintiff/appellant. The trial court subsequently granted the defendant/appellee's motion for judgment notwithstanding the verdict.

In syllabus point 6 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert.*

12. *W.Va.R.Civ.P.* 50(b) provides:

(b) *Motion for judgment notwithstanding the verdict.*—Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict

was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

*denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), this Court held:

> Where a jury returns a general verdict in a case involving two or more liability issues and its verdict is supported by the evidence on at least one issue, the verdict will not be reversed, unless the defendant has requested and been refused the right to have the jury make special findings as to his liability on each of the issues.

*Accord, Keller v. Hartman,* 175 W.Va. 418, 425, 333 S.E.2d 89, 96 (1985). As discussed *ante,* the verdict is supported in this case by the evidence on the retaliatory discharge issue. The defendant/appellee did not request special findings as to its liability on each of the three theories of recovery. The general verdict, therefore, will not be reversed by us, and we need not address the other two theories of recovery.

### IV

■■■■ Where, as here, the trial court granted the motion for judgment notwithstanding the verdict, but failed to rule on the motion for a new trial, and the appellate court reverses the entry of the judgment notwithstanding the verdict, the appellate court has three dispositional alternatives. The appellate court may (1) reinstate the jury's verdict and enter judgment thereon; or (2) order a new trial; or (3) remand the case to the trial court for consideration of the motion for a new trial. 5A J. Moore and J. Lucas, *Moore's Federal Practice* ¶ 50.14, at 50–105 (2d ed. 1986). In the present case we do not believe that the verdict was contrary to the weight of the evidence. We also do not believe that the damages were clearly excessive under the test set forth in syllabus point 1 of *Addair v. Majestic Petroleum Co.,* 160 W.Va. 105, 232 S.E.2d 821 (1977).[13] Accordingly, we do not believe a new trial is

warranted. Instead, we reinstate the jury's verdict and enter judgment thereon.

Reversed; verdict reinstated.

---

**13.** Syllabus point 1 of *Addair v. Majestic Petroleum Co.,* 160 W.Va. 105, 232 S.E.2d 821 (1977), states: "Courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption." *Accord,* syl. pt. 5, *Roberts v. Stevens Clinic Hospital, Inc.,* 176 W.Va. 492, 345 S.E.2d 791 (1986); syl. pt. 10, *Ilosky v. Michelin Tire Corp.,* 172 W.Va. 435, 307 S.E.2d 603 (1983); syl. pt. 2, *Elsey Ford Sales, Inc. v. Solomon,* 167 W.Va. 891, 280 S.E.2d 718 (1981). We note that *Addair v. Majestic Petroleum Co.* as published in the official West Virginia Reports has two syllabus points, while the same case as published in the unofficial regional reporter of West Publishing Co. (S.E.2d) has only one syllabus point (syllabus point 1 in the West Virginia Reports).