467 S.E.2d 165

**C. Donald MILLER and Nancy M. Miller, Plaintiffs Below, Appellees,**

v.

**Judith L. LAMBERT, Executrix of the Estate of Donald L. Lambert, Defendants Below, Appellants.**

**No. 22727.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1995.

Decided Dec. 14, 1995.

Stephen L. Thompson, Leslie Kiser, Barth, Thompson & George, Charleston, for Appellees.

William E. Hamb, Robert W. Kiefer, Jr., Charleston, for Appellants.

PER CURIAM:

This is an appeal by Donald A. Lambert[1] and Judith L. Lambert (hereinafter "the Appellants" or "the Lamberts") from a March 28, 1994, order of the Circuit Court of Kanawha County awarding $40,000 damages and $4,000 attorney fees, pursuant to a jury verdict, to the Appellees, C. Donald Miller and Nancy M. Miller (hereinafter "the Appellees" or "the Millers") in an action filed by the Appellees to recover damages for property trespass. The Appellants contend that the lower court erred by refusing to direct a verdict at the close of the Appellees' case and by denying the Appellants' motion to set aside the verdict and to enter judgment notwithstanding the verdict. We affirm the decision of the lower court.

## I.

The Millers and the Lamberts own adjacent residential real estate along the Kanawha River in Charleston, West Virginia. The Lamberts' riverbank property is burdened by a twenty-foot easement in favor of the West Virginia Water Company, and the water company maintains a large water distribution line located approximately nine feet inside the Lamberts' property from the common division line between the Miller property and the Lambert property. Due to erosion along the riverbank prior to 1982, the Lamberts decided to contract for the place-

---

1. Donald A. Lambert died on April 8, 1995, and Judith L. Lambert, as executrix of the estate of Donald A. Lambert, was substituted as a party Appellant.

ment of fill material, consisting of concrete, stone, and other material, on the riverbank portion of their property. The Lamberts engaged ABC Construction Company to restore their riverbank property, and the initial phase of this work, conducted in 1983, consisted of the placement of large sections of concrete which had been recovered from a Corps of Engineers' project near Huntington, West Virginia. These large sections of concrete were then permitted to settle until 1986 when the area was covered with Indiana limestone, topsoil, and grass. The construction project was supervised by John Scott, Jr., of ABC Construction and cost the Lamberts approximately $34,000. Attempting to create usable riverbank land, the Lamberts extended their riverbank approximately thirty feet out into the river and increased the height of the riverbank by approximately seventeen feet to place the land above the normal flood level. In order to reach the desired result, Mr. Scott had to gradually slope the sides of this fill material to meet the adjoining land on each side of the Lambert property.

While working on the Lamberts' property, Mr. Scott became acquainted with the Millers and the other riverbank property owners in the neighborhood.[2] According to the testimony of Mr. Scott, he and the Millers discussed the possibility that Mr. Scott could possibly perform similar restoration work on the Millers' property. As the work on the Lambert property progressed, significant amounts of fill material, including broken concrete, Indiana limestone, and topsoil, were placed on the Millers' property.[3]

In 1986, the Millers undertook restoration of their own riverbank property and engaged the services of E.L. Porter from the firm of T.G. Kenney & Sons, Inc. As Mr. Porter

prepared to begin such restoration, he observed and informed the Millers that fill material had already been placed on the Millers' riverbank property such that only eighty feet of the original one hundred foot width remained.[4] On December 11, 1986, the Millers hired Dunn Engineers, Inc. to perform a land survey, to place pins and stakes on the boundary line, and to prepare a plat of the area in order for them to discuss the problem with the Lamberts. Dunn Engineers performed the survey and informed the Millers that fill material from both neighboring properties, the Lamberts' and the Ramseys', encroached upon the Millers' property. The fill material placed on the Millers' property from the Lambert side was approximately fifteen feet wide, seventeen feet high, and thirty feet long. As a result of the Lamberts' construction, the eastern fifteen feet of the Millers' property is seventeen feet higher and extends into the river thirty feet further than their remaining land.

Although new corner pins were set in December 1986, the Millers did not receive a plat showing the precise extent of the encroachment until early 1989. The Millers testified that they did not approach the Lamberts prior to their receipt of the plat because they wanted a completed survey and plat to verify the existence and extent of any encroachment prior to bringing any action. Some of the grade stakes which were positioned along the boundary by Dunn Engineers were removed and thrown in the river by Mr. Lambert, according to his own testimony. On April 19, 1989, the Millers first complained to the Lamberts that their riverbank restoration had encroached upon the Millers' property, and the Millers demanded the removal of the fill material and a fence which had been placed on the Millers' prop-

2. Mr. Scott also discussed riverbank restoration with property owners adjoining the Millers' property on the western side of the Miller property. The Lamberts' property is located on the eastern side of the Millers' property.

3. Mr. Scott maintained at trial that the material was placed upon the Millers' property with the knowledge and consent of the Millers in anticipation of the performance of similar work on their

property. The Millers testified at trial that they did not give their permission for the placement of such material and had no knowledge of its placement.

4. The Millers' property originally encompassed approximately 100 feet of shoreline along the Kanawha River. Subsequent to the placement of fill material upon their property, only approximately 80 feet remained unencumbered.

erty by the Lamberts in 1984.[5] The Lamberts responded to the April 1989 request by informing the Millers that the fence and fill material would remain and that if the Millers desired removal, they would have to sue the Lamberts.

On March 8, 1990, the Millers filed a civil action against the Lamberts, alleging that the Lamberts trespassed and encroached upon the Millers' property by the placement of fill material on the riverbank portion of the property during 1983, by constructing a fence on the Millers' property in 1984, and by placing additional fill material on the property in 1986. The Millers, through their Complaint, sought monetary damages, an adjudication of the proper boundary between the properties, and an injunction forcing the removal of the encroachments. The Lamberts maintained in their answer and statement of affirmative defenses that they had acquired the land upon which the fence was built by adverse possession and that the Millers' claims regarding the placement of fill material on the riverbank were barred by the two-year statute of limitations.

This case was tried before a jury on July 30, 1993, and the jury returned a verdict in favor of the Millers in the amount of $40,000 compensatory damages for expenses in restoring the riverbank and $4,000 attorney fees. The jury also established the correct boundary between the Millers' and Lamberts' properties. The Appellants' motion for judgment notwithstanding the verdict was denied,[6] and they now appeal to this Court.

The Appellants allege the following assignments of error: that they cannot be held liable for the actions of their independent contractor, ABC Construction; that the portion of the verdict awarding damages to the Millers for riverbank encroachment is not supported by competent evidence; that the Millers' claim for damage is barred by the statute of limitations; that equitable considerations require that the Millers not recover for the placement of fill material on their riverbank; that the award of attorney's fees to the Millers was improper; and that the Lamberts had acquired the land upon which the fence was placed by adverse possession.

The Millers assert two cross-assignments of error: (1) the lower court erred by failing to quiet title consistent with the determination of the jury, and (2) the lower court erred in granting the Lamberts' motion in limine to exclude evidence that the placement of the fill material was unlawful and in violation of the requirements of the United States Army Corps of Engineers due to its extension of the natural riverbank and its nonconformity with the neighboring property.

## II.

We first address the Lamberts' allegation that West Virginia Code § 55-2-12 (1994), imposing a two-year statute of limitations, bars the claim advanced by the Millers. The Lamberts allege that the Millers discovered the encroachment in 1986 and failed to file the action within the two-year statute of limitations. The Millers respond by advancing a two-fold theory; first, they contend that the trespass is of the nature of a continuing

---

**5.** The fence is alleged to have encroached upon the Millers' property by as much as one foot. It was constructed in 1984 to replace a fence which had been in place since 1948. The Lamberts testified that the new fence was constructed slightly to the east, toward the Lamberts' property, from the location of the old fence and that if any portion of the fence encroached upon the Millers' property, that narrow strip of property had already been acquired by the Lamberts through adverse possession due to the existence of the old fence since 1948. Mr. Ramsey, the Millers' westerly neighbor, however, testified that he was present when the new fence was being constructed and that it was placed approximately one foot to the west, toward the Millers' property, from the location of the old fence.

**6.** The Lamberts' motion for judgment notwithstanding the verdict did not specifically mention the statute of limitations issue and dealt with the timeliness of the Millers' claim only by stating that the lower court "erred in refusing to find as a matter of law that the plaintiffs were guilty of laches barring their recovery...." and by stating that the lower court "erred in refusing to find as a matter of law that the plaintiffs were estopped from asserting their claims against the defendants herein." From our review of the record, it appears that the only pre-trial assertion of the issue of the statute of limitations occurred in the Lamberts' answer.

trespass and therefore gives rise to successive causes of action; second, they maintain that even if the fixed two-year statute of limitations applies, it was within the province of the jury to determine when, for purposes of the statute of limitations, the Millers "discovered" the trespass. *See Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990) (discussing applicability of "discovery rule" concerning accrual of right of action).

■ We have stated that the continuing tort theory is inapposite where the plaintiff claims fixed acts by the defendant which do not involve a continuing wrong. *Ricottilli v. Summersville Memorial Hosp.,* 188 W.Va. 674, 425 S.E.2d 629 (1992). In the present case, the trespass occurred first in 1983 and subsequently in 1986. Even where a tort involves a continuing or repeated injury, the cause of action accrues at the date of the last injury. *Handley v. Town of Shinnston,* 169 W.Va. 617, 289 S.E.2d 201 (1992). In the present case, a continuing trespass theory, even if applied, would only extend the accrual of the cause of action to 1986 and would not excuse the Millers' failure to file this civil action from 1986 to the date of its actual filing on March 8, 1990.

However, the Millers also assert that the determination of the date upon which the statute begins to run is properly within the province of the jury. The jury heard testimony regarding the delay between the Millers' first suspicions of trespass and the filing of their civil action. The jury also heard the Millers' evidence indicating that they did not receive the engineers' plat depicting the trespass until 1989 and the Millers' argument that any valid cause of action could not have accrued until the Millers had tangible evidence of the trespass in the form of the engineers' plat.

■ In syllabus point three of *Stemple,* we explained the following:

> Where a cause of action is based on tort or on a claim of fraud, the statute of limitations does not begin to run until the injured person knows, or by the exercise of

reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury.

184 W.Va. at 318, 400 S.E.2d at 562; *see also Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988); *Pauley v. Combustion Eng'g, Inc.,* 528 F.Supp. 759 (S.D.W.Va.1981). In our recent decision in *Bullman v. D & R Lumber Co.,* 195 W.Va. 129, 464 S.E.2d 771 (W.Va. filed October 27, 1995), we explained the following with regard to a statute of limitations claim raised in that matter:

> The statute of limitations issue was properly before the jury, sufficient evidence was presented, and the jury, after weighing the evidence, found the plaintiff did not learn the defendant entered upon and cut timber from her property until she received the report from the surveyor. This Court accords deference to the jury's finding, and in the absence of evidence to show the jury was clearly wrong, we decline to reverse its decision.

195 W.Va. at 132, 464 S.E.2d at 774.

■ In the present case, however, the statute of limitations defense was insufficiently presented by the Lamberts. Although the Lamberts did include a statute of limitations defense within their answer, they never attempted to raise the issue again prior to trial. They never proposed a jury instruction on the statute of limitations. In fact, according to the record before us, they did nothing to effectively raise the issue again until this appeal. Great emphasis was place upon the alleged estoppel and laches defenses, but the precise issue of the statute of limitations was never crystallized below. Having failed to make an adequate record below, the Lamberts cannot now remedy that deficiency.

### III.

■ The Lamberts also assert that they cannot be held liable for the actions of their independent contractor in placing the fill material on the Millers' property.[7] This Court enunciated the general rule for immunity

---

7. Neither ABC Construction nor any of its employees were included as a party in this civil action.

from liability for negligent acts of an independent contractor in *Law v. Phillips,* 136 W.Va. 761, 68 S.E.2d 452 (1952). We explained that the employer will not be liable for the negligence of his independent contractor where the work is "not in itself unlawful or of such a nature that it is likely to become a nuisance or to subject third persons to unusual damage...." 136 W.Va. at 771, 68 S.E.2d at 458.

In the present case, the Millers attempted to introduce evidence that the work which was requested by the Lamberts was in itself unlawful, thereby eliminating the immunity typically granted to an employer of an independent contractor. The lower court, however, would not permit the introduction of such evidence, reasoning that such matters constituted a separate dispute not involving the Millers and were therefore irrelevant. The Millers have appealed that ruling as a cross-assignment of error in this case. The evidence would have demonstrated that the work was in violation of the requirements of the United States Army Corps of Engineers due to the extension of the natural riverbank and its nonconformity with the neighboring property. The evidence would also have indicated a violation of the Clean Water Act, as administered by the West Virginia Department of Natural Resources. Although the Lamberts obtained permits to conduct their work, the evidence sought to be introduced would have shown that the permits were violated by the placement of excessive fill material on the riverbank and by the extension of the fill material too far into the Kanawha River.

■ In reversing a lower court's ruling on the relevancy issue, abuse of discretion must be shown. *State v. Bass,* 189 W.Va. 416, 432 S.E.2d 86 (1993); *accord State v. Farmer,* 185 W.Va. 232, 406 S.E.2d 458 (1991). We find that the lower court abused its discretion in excluding evidence which was specifically relevant to two issues: (1) the nature of the relationship between the Lamberts and their independent contractor; and (2) damage to the Millers in the form of the establishment of a potential dispute between the Millers and the Army Corps of Engineers and/or the Department of Natural

Resources based upon illegal encroachment of fill material from their property into the river. Once that evidence of illegality of the Lamberts' construction is considered, the argument that the Lamberts are not entitled to immunity from liability for the negligence of their independent contractor is tenable, based upon our holding in *Law. See* 136 W.Va. at 771, 68 S.E.2d at 458.

■ In addition to their argument that the work was in itself unlawful, the Millers also assert that the Lamberts retained sufficient control of the project to subject them to liability for the acts of their independent contractor. In syllabus point five of *Law,* we explained:

Ordinarily an employer of a competent independent contractor to perform work not unlawful or intrinsically dangerous in character, who exercises no supervision or control over the work contracted for, is not liable for the negligence of such independent contractor or his servants in the performance of the work; but if such work is intrinsically dangerous in character or is likely to cause injury to another person if proper care should not be taken, such employer can not escape liability for the negligent performance of such work by delegating it to such independent contractor.

136 W.Va. at 762, 68 S.E.2d at 454. We have also explained as follows:

The general rule is that where one person has contracted with a competent person to do work, not in itself unlawful or intrinsically dangerous in character, and who exercises no supervision or control over the work contracted for, such person is not liable for the negligence of such independent contractor or his servants in the performance of the work.

Syl. Pt. 1, *Chenoweth v. Settle Engineers, Inc.,* 151 W.Va. 830, 156 S.E.2d 297 (1967). The jury was in the instant case properly instructed on this issue, as follows:

The Court instructs the jury that to maintain the present action against the defendants for the property alleged to have been damaged as a result of the defendants' trespass upon the property of the plaintiffs, Don and Nancy Miller, the

plaintiffs must show that the defendant actually participated in the trespass either by having been personally present, concurring and aiding in the same, or by having previously encouraged, advised, instigated or requested the trespass, or that the alleged trespasses were committed for the benefit of the defendants, or that they assented to and acquiesced in the same after the commission thereof. Ordinarily, and as a general rule, he who goes in aid of those who commit a trespass, though he takes no further part in it, or who cooperates therein, or aids, encourages, countenances, commands or advises the same, if done for his benefit, or who subsequently recognizes, approves, and adopts the trespass with its purpose, results and benefits, is liable for the injury done by others in the trespass; but the question of cooperating and participating in the trespass, and all matters of fact, and the consequent liability is a question for the jury, who must ascertain and determine the facts and apply the law under the instructions of the Court.

We find that the jury was presented with evidence of the Lamberts' position regarding the immunity from liability for actions of an independent contractor, and we conclude that the evidence supports the conclusion reached by the jury on this issue.

## IV.

The Lamberts also contend that the damages awarded by the jury were not supported by the evidence. The testimony of the Lamberts' independent contractor, Mr. Scott, indicated that he had been involved in riverbank restoration for thirty-two years. Moreover, he was familiar with the specific property in question due to the extensive work he performed on the property. He estimated the cost of removal of the fill material at approximately $25,000 to $30,000. The Lamberts failed to object to the introduction of this testimony at trial, yet they now allege that it constitutes an unsubstantiated rough estimate which cannot form a basis for the jury's award of damages.

■ In reviewing the test for assessing the sufficiency of evidence to support a jury

verdict, we stated the following in syllabus point two of *Tanner v. Rite Aid,* 194 W.Va. 643, 461 S.E.2d 149 (1995):

" 'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syl. pt. 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984)." Syl. Pt. 6, *McClung v. Marion County Comm'n,* 178 W.Va. 444, 360 S.E.2d 221 (1987).

We have also explained that " '[c]ourts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption.' Syl. Pt., *Addair v. Majestic Petroleum Co., Inc.,* 160 W.Va. 105, 232 S.E.2d 821 (1977)." Syl. pt. 5, *Roberts v. Stevens Clinic Hosp. Inc.,* 176 W.Va. 492, 345 S.E.2d 791 (1986); *accord* Syl. Pt. 5 *Tanner,* 194 W.Va. at 645, 461 S.E.2d at 151; *Capper v. Gates,* 193 W.Va. 9, 454 S.E.2d 54 (1994).

■ Given the fact that Mr. Scott was intimately familiar with the property in question and the extensive nature of the restoration work performed, we do not conclude that his testimony regarding cost of restoration was unfounded or speculative, and we find that the evidence regarding such restoration was sufficient to support the jury verdict.

## V.

■ The Lamberts also asserts that the Millers should not have been awarded attorney fees. As we have previously recognized, " '[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorneys' fees and "costs" without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.' Syl.

Pt. 3, *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986)." Syl. Pt. 5, *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988). The Millers introduced evidence that the Lamberts were aware of the encroachment and that Mr. Lambert personally removed boundary markers and threw them in the river. The jury was properly instructed that they could not award attorney fees to the Millers "unless you first find by clear and convincing evidence that in defending this action the Lamberts acted in bad faith, vexatiously, wantonly, or for oppressive reasons." We find no justification for disturbing the jury verdict on this issue.

## VI.

The Millers also asserted at trial that a picket fence recently constructed by the Lamberts encroached upon their property. This fence had been constructed to replace a fence which had existed near the boundary line since approximately 1948. The Lamberts responded with the contention that even if some portion of the fence did encroach upon property originally owned by the Lamberts, that portion had been acquired by the Lamberts through adverse possession based upon the length of time the old fence had existed in that location.

In syllabus point three of *Somon v. Murphy Fabrication and Erection Company,* 160 W.Va. 84, 232 S.E.2d 524 (1977), we explained the elements of adverse possession, as follows:

One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession

has been continuous; (6) That possession has been under claim of title or color of title.

160 W.Va. at 85, 232 S.E.2d at 525–26.

Extensive evidence was presented at trial regarding the exact position of the old fence and whether the new fence had been constructed along precisely the same line as the old fence. Conflicting evidence was presented on the issue of whether the original fence and the new fence, constructed in 1984 (five years before the institution of this action), were in the same location. From the evidence presented, the jury could properly conclude that the new fence was constructed along a line *closer* to the Miller property, thereby creating an area which had not previously been encompassed within the property considered to be owned and maintained by the Lamberts and which would therefore not meet the statutory requirement of ten years of continuous, actual possession.

The jury was provided with thirteen separate instructions, pursuant to our pronouncements in *Somon,* concerning the precise elements of adverse possession and the role of the boundary fence in the determination of the adverse possession issue. Neither party alleges instructional error; the Lamberts are simply dissatisfied with the jury's conclusion based on that substantial instructional information.[8] " ' "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." Point 2, Syllabus, *French v. Sinkford,* 132 W.Va. 66, [54 S.E.2d 38].' Syllabus Point 6, *Earl T. Browder, Inc. v. County Court,* 145 W.Va. 696, 116 S.E.2d 867 (1960)." Syl. Pt. 2, *Rhodes v. Nat'l Homes Corp.,* 163 W.Va. 669, 263 S.E.2d 84 (1979); *see also Dustin v. Miller,* 180 W.Va. 186, 375 S.E.2d 818 (1988).

Based upon our review of the record, as well as the briefs and arguments of counsel,

8. The Millers also emphasize that the Lamberts failed to move for a directed verdict on the issue of their possession claim and that such issue should not therefore be considered on appeal. *See* W.Va.R.Civ.P. 50(b); *Steptoe v. Mason,* 153 W.Va. 783, 172 S.E.2d 587 (1970).

we affirm the decision of the lower court. We also direct the lower court, consistent with the Millers' counter-assignment of error, to quiet title to the disputed property in the Millers in accordance with the boundary determinations made by the jury.

Affirmed.

MILLER, Retired J., sitting by temporary assignment.

ALBRIGHT, J., did not participate.