**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia,
Plaintiff Below, Respondent

**v.)  No. 24-15** (Wayne County CC-50-2023-F-97)

Joshua Pruitt,
Defendant Below, Petitioner

## MEMORANDUM DECISION

Petitioner Joshua Pruitt appeals his convictions, as reflected in the Circuit Court of Wayne County's December 7, 2023, sentencing order, for grand larceny and conspiracy to commit grand larceny.[1] The petitioner argues that the State failed to present sufficient evidence at trial to support the convictions. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In July 2023, the petitioner was indicted for grand larceny and conspiracy to commit grand larceny in connection with a theft of a 1982 Honda motorcycle from Joe Lycan. The petitioner's codefendants, Nicklos Perry and Danielle Robertson, were indicted for grand larceny, entry of a building other than a dwelling, conspiracy to commit grand larceny, and conspiracy to commit entry of a building other than a dwelling. Joseph Adkins was also involved in the theft of the motorcycle, and he pled guilty to grand larceny and entry of a building other than a dwelling before the petitioner, Mr. Perry, and Ms. Robertson were indicted. After the indictment was returned, Ms. Robertson pled guilty to conspiracy to commit grand larceny. Mr. Perry and the petitioner proceeded to a joint trial where both Ms. Robertson and Mr. Adkins testified.

At trial, Captain James Ward from the Wayne County Sheriff's Department testified that Mr. Lycan reported that someone broke into one of his buildings and stole the motorcycle. Captain Ward then contacted Ms. Robertson because one of his co-workers saw that Ms. Robertson had listed the motorcycle, along with a photograph, for sale on her Facebook account. When she was contacted by police, Ms. Robertson admitted that the motorcycle had been stolen.

---

[1] The petitioner appears by counsel Juston Moore. The State appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

Mr. Adkins testified to the sequence of events surrounding the theft. He explained that Ms. Robertson came to him with the idea to steal a motorcycle and "sell it to get drugs." To accomplish this plan, Mr. Adkins, Ms. Robertson, Mr. Perry, and Frankie Workman[2] rode to Mr. Lycan's property and pushed the motorcycle out of a building through an opening in a fence and left the motorcycle in the weeds. A few days later, Mr. Adkins and Ms. Robertson returned and attempted to tow the motorcycle by tying it to Ms. Robertson's truck while Mr. Adkins rode on the motorcycle. This attempt failed when Mr. Adkins wrecked the motorcycle. Mr. Adkins testified that he could not continue helping Ms. Robertson because he was injured and wanted to go home, but "she wanted to find somebody else to help her get it." While Mr. Adkins rode with Ms. Robertson back to his house, they encountered the petitioner. Mr. Adkins testified that Ms. Robertson "got him [the petitioner] to go help her finish getting" the motorcycle. The petitioner climbed into Ms. Robertson's truck, and while they were riding in the truck, Mr. Adkins heard Ms. Robertson tell the petitioner, "We wrecked this motorcycle down here. Joey wrecked it. I need help to finish getting it because we just took it from down here." When asked if he heard Ms. Robertson tell the petitioner the motorcycle was stolen, Mr. Adkins replied, "I mean you can kind of figure, yeah, it was." Mr. Adkins also testified that he believed the petitioner knew that they planned to sell the motorcycle for drugs. Ms. Robertson and the petitioner dropped Mr. Adkins off at his house, and they returned later that day with the stolen motorcycle. Ms. Robertson wanted to leave the motorcycle at Mr. Adkins's house, but Mr. Adkins "told her that she couldn't have the bike there" and instructed both Ms. Robertson and the petitioner to take the motorcycle to his cousin who lived in Kentucky.

Mr. Lycan testified that his stolen motorcycle was a 1982 Honda CB900C with dual transmission, in good condition, and worth $10,000. Mr. Lycan testified that some parts from the motorcycle were damaged or stolen during the theft, and the replacement cost for those parts totaled $5,750.

The State rested its case-in-chief at the conclusion of Mr. Lycan's testimony, and the petitioner moved for a judgment of acquittal because "the only evidence they have is some alleged statement from Danielle Robertson that Mr. Adkins testified that he heard." The court denied this motion, ruling that there had been testimony to support a conviction.

The sole witness for the defense, Ms. Robertson, testified that the genesis for the motorcycle theft occurred when Mr. Adkins told her that "he found a house with a bike at it that he could trade to his cousin for drugs." Ms. Robertson stated that Mr. Adkins wrecked the motorcycle while she was towing it with her truck, and they left it lying in the road. While she was taking Mr. Adkins back to his house, she saw the petitioner, whom she had known for a couple of years, sitting outside a home with a group of people and she "had [him] get in the back of my truck." When asked if she spoke to the petitioner about the motorcycle, Ms. Robertson testified "he asked me, you know, what was going on, whose was it" and he repeatedly asked her if the motorcycle was stolen, but she said she did not respond to his questions because she "did not want to involve him or anyone else into the drugs." Ms. Robertson insisted that she did not tell the

---

[2] Frankie Workman was not charged with the theft of the motorcycle and did not testify at trial.

petitioner that the motorcycle was stolen, and she "just told him that I needed his help." She and the petitioner retrieved the motorcycle from where it was wrecked and dropped it off at Mr. Adkins' house. Ms. Roberston denied having a conversation with Mr. Adkins after she brought the motorcycle to him, and she said that Mr. Adkins was the one who took the motorcycle to his cousin in Kentucky.

The defense rested, and after deliberation, the jury convicted the petitioner of grand larceny and conspiracy to commit grand larceny. The petitioner filed a motion for new trial arguing that the only evidence regarding his intent to permanently deprive Mr. Lycan of his motorcycle was the testimony of Mr. Adkins, who the petitioner argued was not a credible witness. The petitioner emphasized that Ms. Robertson denied telling him the motorcycle had been stolen. The circuit court denied the motion, ruling that there was sufficient evidence at trial for a reasonable jury to conclude the petitioner was guilty of both counts. The court further ruled that "there are always questions of witness credibility in trials" and "[b]ased on the evidence presented, the jury found Joey Adkins to be more credible than Danielle Robertson." Subsequently, by order dated December 7, 2023, the petitioner was consecutively sentenced to one to ten years' imprisonment for grand larceny and one to five years' imprisonment for conspiracy to commit grand larceny. The petitioner now appeals.

In his sole assignment of error, the petitioner alleges that the circuit court erred when it denied his motion for judgment of acquittal and motion for new trial based on the sufficiency of the evidence. Specifically, the petitioner claims that Mr. Adkins provided the only evidence to support his convictions, but his testimony was incredible.

This "Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based on the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citation omitted). When a circuit court denies a motion for new trial, we review its conclusion as to the existence of reversible error under an abuse of discretion standard, we review findings of fact for clear error, and we review questions of law de novo. Syl. Pt. 3, in part, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Further, when this Court analyzes the sufficiency of evidence to support a criminal conviction, we consider "the evidence in the light most favorable to the prosecution" to determine if "any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We "must accept all reasonable inferences from [the evidence] that are consistent with the verdict[,]" and the circuit court must "resolve all evidentiary conflicts and credibility questions in the prosecution's favor[.]" Syl. Pt. 2, in part, *State v. LaRock*, 196 W. Va. 24, 470 S.E.2d 613 (1996).

To support a grand larceny conviction, "it must be shown that the [petitioner] took and carried away the personal property of another against his will . . . with the intent to permanently deprive him of the ownership thereof[,]" and that the property was valued at $1,000 or more. *See* Syl. Pt. 3, in part, *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1981); W. Va. Code § 61-3-13(a). To support a conviction for conspiracy to commit grand larceny, the State must prove that the petitioner "agreed with others" to commit grand larceny "and that some overt act was taken by a

member of the conspiracy to effect the object of the conspiracy." *See* Syl. Pt. 4, in part, *State v. Less*, 170 W. Va. 259, 294 S.E.2d 62 (1981); W. Va. Code § 61-10-31(a)(1).

Here, Mr. Adkins testified that he was present when Ms. Robertson enlisted the petitioner's help in transporting the stolen motorcycle, that he believed Ms. Robertson had informed the petitioner that the motorcycle had been stolen, and that he saw Ms. Robertson and the petitioner with the stolen motorcycle when they returned to his house. Mr. Adkins also testified to a general plan to trade the motorcycle to his cousin in exchange for drugs, and that Ms. Robertson and the petitioner were tasked with the responsibility of delivering the motorcycle to his cousin. Further, regarding value, Mr. Lycan testified that the value of the motorcycle was more than $1,000. While the petitioner questions the credibility of Mr. Adkins's testimony, and claims that Ms. Robertson's testimony is more credible, credibility determinations are "for a jury and not an appellate court." *Guthrie* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. Accordingly, given the foregoing, there is sufficient evidence from which a reasonable jury could find that the petitioner conspired with Ms. Robertson to take Mr. Lycan's motorcycle with the intent to permanently deprive him of ownership and that the petitioner did, in fact, do so. Therefore, we conclude that there was sufficient evidence to satisfy the elements of grand larceny and conspiracy to commit grand larceny, and the circuit court did not err when it denied the petitioner's motions for a judgment of acquittal and a new trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 24, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III