IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

_____

No. 17-0485

_____

FILED

**June 6, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ERIC BURKE,
Plaintiff Below, Petitioner

v.

WETZEL COUNTY COMMISSION and
SCOTT LEMLEY, Individually and as Wetzel County Assessor,
Defendants Below, Respondent

_____

Appeal from the Circuit Court of Wetzel County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 16-C-91

REVERSED AND REMANDED

_____

Submitted: May 16, 2018
Filed: June 6, 2018

Jeffrey A. Holmstrand, Esq.
Jeffrey A. Grove, Esq.
Grove, Holmstrand & Delk, PLLC
Wheeling, West Virginia
Counsel for the Petitioner

Karen T. McElhinny, Esq.
Roberta F. Green, Esq.
Caleb B. David, Esq.
Shuman, McCuskey & Slicer, PLLC
Charleston, West Virginia
Counsel for the Respondents

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.    "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."  Syllabus Point 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

3.    "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine.  Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition."  Syllabus Point 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

4.    "When a county assessor seeks to hire an employee to perform duties other than assessing and appraising duties, the assessor is required to first obtain the advice and consent of the county commission pursuant to W. Va. Code § 7–7–7 (2000) (Repl.Vol.

i

2006)." Syllabus Point 8, in part, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008).

5.      "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc*., 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syllabus Point 11, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B*., 234 W. Va. 492, 766 S.E.2d 751 (2014).

6.      "In order to make a prima facie case of employment discrimination under the Human Rights Act, a plaintiff must offer proof of the following: (1) that the plaintiff is a member of a protected class; (2) that the employer made an adverse decision concerning the plaintiff; (3) but for the plaintiff's protected status, the adverse decision would not have been made." Syllabus Point 3, *Conaway v. Eastern Assoc. Coal Corp*., 178 W. Va. 164, 358 S.E.2d 423 (1986).

7.      "Under our Human Rights Act, W. Va. Code, 5–11–1 *et seq*., a 'person with a disability' within the meaning of the law means a person who has one or

more physical or mental impairments that substantially limits one or more major life activities; a person who has one or more physical or mental impairments that does not substantially limit one or more major life activities, but that is treated by others as being such a limitation; a person who has one or more physical or mental impairments that substantially limits major life activities only as a result of the attitudes of others toward such impairment; and a person who has no such impairments, but who is treated by others as having such impairments." Syllabus Point 3, *Stone v. St. Joseph's Hospital*, 208 W. Va. 91, 538 S.E.2d 380 (2000).

8.     "To establish a claim for sexual harassment under the West Virginia Human Rights Act, W. Va. Code § 5–11–1, *et seq*., based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Syllabus Point 5, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

9.     "To establish a claim for ancestral discrimination, under the West Virginia Human Rights Act, West Virginia Code §§ 5-11-1 to -20 (1999) based upon a hostile or abusive work environment, a plaintiff-employee must prove that: (1) that the subject conduct was unwelcome; (2) it was based on the ancestry of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment; and (4) it

was imputable on some factual basis to the employer." Syllabus Point 2, *Fairmont Specialty Services v. W. Virginia Human Rights Comm'n*, 206 W. Va. 86, 522 S.E.2d 180 (1999).

10. "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." Syllabus Point 1, *Harless v. First Nat'l Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

11. "To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syllabus Point 2, *Birthisel v. Tri–Cities Health Services Corp.*, 188 W. Va. 371, 424 S.E.2d 606 (1992).

12. "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Syllabus Point 3, *Birthisel v. Tri–Cities Health Services Corp.*, 188 W. Va. 371, 424 S.E.2d 606 (1992).

13. "In a retaliatory discharge action, where the plaintiff claims that he or she was discharged for exercising his or her constitutional right(s), the burden is initially

upon the plaintiff to show that the exercise of his or her constitutional right(s) was a substantial or a motivating factor for the discharge. The plaintiff need not show that the exercise of the constitutional right(s) was the only precipitating factor for the discharge. The employer may defeat the claim by showing that the employee would have been discharged even in the absence of the protected conduct." Syllabus Point 3, *McClung v. Marion Cty. Comm'n*, 178 W. Va. 444, 360 S.E.2d 221 (1987).

WALKER, Justice:

In 2016, Eric Burke was terminated from his employment as a Field Appraisal Supervisor in the office of the Wetzel County Assessor. He then filed a lawsuit against the Wetzel County Commission and Scott Lemley, the Wetzel County Assessor, claiming wrongful discharge in violation of public policy and violation of the West Virginia Human Rights Act, Family Medical Leave Act and West Virginia Whistle-blower Law, among other things. Finding that Mr. Lemley was entitled to qualified immunity and that all of Mr. Burke's claims lacked merit based entirely on the amended complaint, the circuit court dismissed the case pursuant to Rule 12(b)(6). Construing the amended complaint in the light most favorable to Mr. Burke, we reverse and remand to the circuit court to allow for discovery and further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Burke began his employment in the Wetzel County Assessor's office in February 2013 and subsequently took the position of Field Appraisal Supervisor in January 2014.[1] Mr. Burke alleges that during the course of his employment he suffered from a back condition of which Mr. Lemley was aware, and that at times it was disabling because it

---

[1] The amended complaint alleges that despite this title, Petitioner held no supervisory duties and had no policy-making authority. While Petitioner worked in the county assessor's office, he was directly supervised by Mr. Lemley, who was the top management official. Petitioner alleges that he was a joint employee of the Wetzel County Assessor and the Commission.

1

substantially limited his daily life activities, and required various types of treatment, including rest and pain medication. In March of 2015, Mr. Burke applied for leave from work under the Family Medical Leave Act (FMLA)[2] for back surgery in April of 2015. Mr. Burke asserts that on March 31, 2015, Mr. Lemley raised an issue with the medication Mr. Burke was taking and stated that he needed a release from a physician to return to work either before or after his FMLA leave. The amended complaint states that Mr. Burke "attempted to return to work prior to taking his FMLA as he was off work sick due to bronchitis and was required to provide a full medical release to Mr. Lemley to allow unfettered access to his medical records to which [he] objected." Mr. Burke further alleges that "Mr. Lemley confiscated [Mr. Burke's] keys to [the] courthouse, electronic key fob, and his state ID and demanded that [Mr. Burke] leave the premises."

Mr. Burke alleges that on August 12, 2015, following his surgery and leave, he provided Mr. Lemley with a medical authorization clearing him to return to full unrestricted work duties, but Mr. Lemley refused to accept the medical authorization and instead demanded a release from another physician and a list of all of his medications. Mr. Burke further alleges that Mr. Lemley (1) demanded that Mr. Burke undergo drug testing, although he admitted he had no reason to believe that Mr. Burke was using illegal drugs; (2) had co-employees hand deliver correspondence to Mr. Burke's home concerning the

---

[2] 29 U.S.C.§§ 2601-2654 (2012).

assessor's compliance with the Federal Drug Free Workplace Act; (3) failed to return Mr. Burke to his pre-leave duties; (4) made various demeaning comments regarding Mr. Burke in the presence of other employees; (5) restricted Mr. Burke's use of a county vehicle though Mr. Burke was under no medical driving restriction; and (6) imposed an unfounded suspension on September 11, 2015 for failing to sign a discipline statement, for which Mr. Burke was not compensated.

Mr. Burke asserts that he reported the alleged harassment to the Commission "per policy of the Assessor's Office" in September of 2015, and that he filed to run against Mr. Lemley for county assessor in November of 2015. Mr. Burke alleges that he was subjected to increased harassment and discrimination by Mr. Lemley following his filing. Mr. Lemley was re-elected in May of 2016. Mr. Lemley informed Mr. Burke on July 11, 2016, that his employment was terminated for a poor performance evaluation conducted a month prior.[3]

---

[3] The amended complaint also alleges that up until the time that Mr. Burke requested medical leave, he had never received a written reprimand or discipline, but rather had only received favorable evaluations from Mr. Lemley and several salary increases and letters thanking him for his outstanding work. Petitioner alleges he also received expensive gifts from Mr. Lemley totaling thousands of dollars, but because Mr. Lemley's actions made Petitioner uncomfortable, he approached Mr. Lemley in March 2015 and told him he did not want any more gifts. Mr. Burke further alleges that in January 2014, "during an out of town work conference in [sic] which [Mr. Lemley] invited [Mr. Burke] to attend, [Mr. Lemley] bought alcoholic drinks after dinner and then invited [Mr. Burke] to his hotel room to which [Mr. Burke] refused."

3

On September 29, 2016, Mr. Burke filed a complaint against the Commission and Mr. Lemley, in his capacity as county assessor, asserting that, following Mr. Burke's extended medical leave and decision to challenge Mr. Lemley for the office of county assessor, Respondents: (1) created a hostile work environment and discharged him in a retaliatory fashion; (2) violated his state and federal constitutional rights to run for public office; (3) unlawfully discharged him in violation of the FMLA and West Virginia Human Rights Act (Human Rights Act)[4]; and (4) violated the West Virginia Whistle-blower Law.[5] On October 31, 2016, Mr. Lemley and the Commission filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Respondents argued that that the Commission was not Mr. Burke's employer; that the facts set forth in Mr. Burke's complaint showed that Mr. Lemley made reasonable accommodation for Mr. Burke's medical needs; and that with respect to Mr. Burke's constitutional claims, neither Mr. Lemley nor the Commission were state actors. Mr. Lemley also asserted that he is entitled to qualified immunity. On November 28, 2016, Mr. Burke filed an amended complaint that added an additional claim against Mr. Lemley in his individual capacity.

Following a hearing, the circuit court granted the motion to dismiss by order entered on May 1, 2017. Although there had been no discovery in the case, it found that (1) according to West Virginia Code § 29-12A-3(3), the "State" does not include political

---

[4] W. Va. Code §§5-11-1 through -20 (2013).

[5] W. Va. Code § 6C-1-1 through -8 (2015).

4

subdivisions and its employees are thus not afforded due process of law, and Respondents thus were incapable of violating Mr. Burke's constitutional right to run for office; (2) the Commission could not be liable under the theory of respondeat superior because it has no control over Mr. Lemley, who answers to his electorate constituency, and who is granted the power by West Virginia Code § 7-7-7(b) to discharge his assistants; (3) Mr. Burke set forth no facts in his complaint stating a claim for violation of the Human Rights Act because he acknowledged that his employer granted him the accommodation he requested; and (4) Mr. Burke did not assert that he made a report of public interest, but only that he reported his own personal harassment, and he is thus not a whistleblower. The circuit court also concluded that Mr. Lemley is entitled to qualified immunity because he acted in his official capacity and did not violate any clearly established law of which a reasonable official would have known.

It is from that order that Mr. Burke now appeals.

## II.  STANDARD OF REVIEW

This Court has long held that our "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is de novo."[6]  "The purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the sufficiency of the

---

[6] Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

complaint. A trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice."[7] "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true."[8] Therefore, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[9]

Furthermore, with respect to the issue of qualified immunity presented in this case,

> [t]he ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.[10]

---

[7] *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007).

[8] *Sedlock v. Moyle*, 222 W. Va. 547, 550, 668 S.E.2d 176, 179 (2008) (citing *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 604-05, 245 S.E.2d 157, 158-59 (1978)).

[9] Syl. Pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[10] Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

With these standards in mind, we review the circuit court's decision to dismiss Mr. Burke's amended complaint.

## III.  DISCUSSION

### A.  *Joint Employment Relationship*

Mr. Burke first argues that he alleged sufficient facts to demonstrate that Mr. Lemley and the Commission were his joint employers and that these allegations were sufficient to overcome dismissal of the Commission as a party.  He argues that two West Virginia statutes—West Virginia Code § 7-7-7(a)[11] and § 11-1C-8(a)[12]—potentially apply

---

[11] West Virginia Code § 7-7-7 (2015) provides:

> (a) The county clerk, circuit clerk, sheriff, county assessor and prosecuting attorney, *by and with the advice and consent of the county commission*, may appoint and employ, to assist them in the discharge of their official duties for and during their respective terms of office, assistants, deputies and employees. . . . .
>
> (h) Each county official named in this section shall have the authority to discharge any of his or her assistants, deputies or employees *by filing with the clerk of the county commission a discharge statement specifying the discharge action. . . .*

(emphasis added).

[12] West Virginia Code § 11-1C-8(a) (2013) provides:

> (a) In order to finance the extra costs associated with the valuation and training mandated by this article, there is hereby created a revolving valuation fund in each county which shall be used exclusively to fund the assessor's office. No persons whose salary is payable from the valuation fund shall be hired under this section without the approval of the valuation

7

to individuals employed in county assessor offices and that this Court has determined that county employees hired under the former are joint employees of the elected official and the county commission.[13] Mr. Burke contends that he was hired pursuant to West Virginia Code § 7-7-7(a) and at a minimum, the question of which statute Mr. Burke was hired under is a factual question that could not be resolved at the pleading stage.[14] He also alleges that the Commission was listed as the "employer" on his federal W-2 form, and that Respondents do not deny this allegation.

---

commission, the hirings shall be without regard to political favor or affiliation, and the persons hired under this section are subject to the provisions of the ethics act in chapter six-b [§§ 6B-1-1 et seq.] of this code, including, but not limited to, the conflict of interest provisions under chapter six-b of this code. Notwithstanding any other provisions of this code to the contrary, assessors may employ citizens of any West Virginia county for the purpose of performing, assessing and appraising duties under this chapter upon approval of the employment by the valuation commission.

[13] This Court has stated that "with respect to county assessors, the Legislature intended for the more general statute, W. Va. Code § 7-7-7, to apply to that class of employees who are paid from the general county fund, while W. Va. Code § 11-1C-8(a), a statute specifically related to fair and equitable property valuation, is intended to apply to those employees who are hired to perform assessing and appraising duties and who are paid from the valuation fund." *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 31, 658 S.E.2d 555, 561 (2008).

[14] By appending an exhibit to his reply brief, Mr. Burke attempts to present this Court with a series of emails showing that contrary to Respondents' assertions, he is not paid out of the Valuation Fund under West Virginia Code § 11-1C-8. However, to the extent that these documents are outside of the pleadings and the record before us on appeal, we will not consider them here.

This Court has previously held that employees hired pursuant to West Virginia Code § 7-7-7(a) are joint employees of the county commission and elected county officials.[15] Applying this statute in *Fury v. County Court of Wood County*,[16] the United States District Court for the Southern District of West Virginia expressed that:

> The resolution of Defendants' motions to dismiss turns upon the issue of whether the County Commission is the Plaintiff's employer or whether Plaintiffs are employed by the elected county officials in whose offices they work. The statute controlling this issue, *W. Va. Code*, § 7-7-7, makes it clear that as a general proposition the County Commission *and* individual elected county officials are joint employers of those employees in the various county offices.[17]

In the context of determining whether a county commission was a joint employer of individuals appointed or employed by a sheriff, we have observed, ". . . it is the Commission who retains the ultimate responsibility for the compensation of these persons and the assurance of the orderly operation of the county government[.]"[18] In *State ex rel.*

---

[15] *See Haney v. Cty. Comm'n of Preston Cty.*, 212 W. Va. 824, 830, 575 S.E.2d 434, 440 (2002) ("County Commission employees include employees of the various elected county officials including the county clerk, circuit clerk, county assessor, and prosecuting attorney. . . Pursuant to W. Va. Code § 7-7-7 (2000), these elected county officials hire employees 'by and with the advice and consent of the county commission[.]'").

[16] 608 F. Supp. 198, 199 (S.D. W. Va. 1985).

[17] *Id.* (emphasis in original).

[18] *Webster Cty. Comm'n v. Clayton*, 206 W. Va. 107, 113, 522 S.E.2d 201, 207 (1999); *see also* Syl. Pt. 8, in part, *Harrison Cty. Comm'n*, 222 W. Va. at 25, 658 S.E.2d at 555 ("When a county assessor seeks to hire an employee to perform duties other than assessing and appraising duties, the assessor is required to first obtain the advice and

*Morrisey v. W. Va. Office of Disciplinary Counsel*, we recently cited *Fury* and held that an assistant prosecutor appointed under West Virginia Code § 7-7-7 is considered an employee of the prosecutor and the county, and is paid by the county.[19] In sum, we held that "in the absence of a statute indicating otherwise, a prosecutor's appointment of assistants under [West Virginia] Code § 7-7-8 (1987) (Repl. Vol. 2010) and [West Virginia] Code § 7–7–7 (2011) (Supp.2014) is generally limited to that of appointing attorneys as employees of the prosecutor and county commission."[20]

Although in this case, the circuit court's order does not clearly identify the statute it relied on, to the extent that the circuit court, in relying upon our prior holding in *Harrison County Commission*, assumed that Mr. Burke was employed under West Virginia Code § 11-1C-8(a) instead of West Virginia Code § 7-7-7, such a ruling was premature. Mr. Burke not only alleges that he was hired under West Virginia Code § 7-7-7, but also alleges that the Commission is identified as his employer on his W-2. Thus, a factual dispute exists that should have been permitted to be the subject of discovery by the parties.

---

consent of the county commission pursuant to W. Va. Code § 7–7–7 (2000) (Repl.Vol. 2006).")).

[19] 234 W. Va. 238, 250, 764 S.E.2d 769, 781 (2014).

[20] *Id.*

10

And, to the extent that the circuit court determined that "no evidence was adduced that the . . . Commission had policies or customs that led to his termination or that the . . . Commission terminated his employment," such a finding is likewise premature. Mr. Burke's amended complaint alleged that to the extent that the Commission permitted and/or authorized Lemley to take adverse employment action against their joint employee such action constitutes the official policy, custom, and practice of the Commission and that "the Commission's policy, custom, and/or practice is . . . *reflected in its prior knowledge* and *permitting similar terminations* of Commission employees to occur by Lemley and other County offices."[21] Rule 12(b)(6) does not call for "evidence" but rather requires a court to construe allegations in the light most favorable to the plaintiff.

## B. Qualified Immunity

In its dismissal order, the circuit court found that Mr. Lemley is a "public executive official who [was] acting within the scope of his authority and . . . is entitled to qualified immunity from personal liability for official acts if the involved conduct did not

---

[21] (emphasis added). Alternatively, Mr. Burke asserts that even if the commission is not his employer, it is nevertheless responsible under respondeat superior for Mr. Lemley's conduct because the Commission is Mr. Lemley's statutory employer under W. Va. Code § 29-12A-3(a) and the Commission is responsible for the negligent acts of its employees. However, because we conclude that the circuit court erred in holding that Mr. Lemley and the Commission were not joint employers of Mr. Burke, we need not reach this issue.

11

violate clearly established laws of which a reasonable official would have known." With

respect to the issue of qualified immunity, we have stated,

> We agree with the United States Supreme Court to the extent it has encouraged, if not mandated, that claims of immunities, where ripe for disposition, should be summarily decided before trial. Public officials and local government units should be entitled to qualified immunity from suit under § 1983, or statutory immunity under W. Va. Code, 29–12A–5(a), unless it is shown by specific allegations that the immunity does not apply. *See State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992).[22]

But, as to qualified immunity for discretionary functions, such as employee

hiring and retention, we have held:

> To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.[23]

Mr. Burke argues that the circuit court erred in determining that Mr. Lemley

was entitled to qualified immunity by improperly making legal and factual determinations

---

[22] *Hutchison*, 198 W. Va. at 147-48, 479 S.E.2d at 657-58.

[23] Syl. Pt. 11, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

that Mr. Lemley did not violate any clearly established laws of which a reasonable official would have known. Mr. Burke argues that his claims arise from the employment relationship, that the Tort Claims Act does not apply, and that his amended complaint set forth clearly established laws that Mr. Lemley is deemed to know about, and that Mr. Lemley violated.[24] We agree.

Even a cursory analysis of the amended complaint reveals that Mr. Burke's claims are not barred by qualified immunity. The circuit court, without the benefit of any discovery or other factual development, improperly determined that Mr. Lemley did not violate any law of which a reasonable official would have known by ignoring the numerous allegations that Mr. Burke's termination was motivated by the unlawful conduct set forth in the amended complaint. The issue of motive for a discharge presents a question of fact.[25]

---

[24] Here, the parties agree that the Tort Claims Act, West Virginia Code § 29-12A-1, has no application to Mr. Burke's employment-related claims. *See* W. Va. Code § 29-12A-18(c) (2013) ("This article does not apply to . . . Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his or her employment."); *see also* W. Va. Code § 29-12A-5(b) (2013) ("[a]n employee of a political subdivision is immune from liability unless one of the following applies . . . (3) Liability is expressly imposed upon the employee by a provision of this code.").

[25] *See Tiernan v. CMAC*, 212 W. Va. 859, 864, 575 S.E.2d 618, 623 (2002) (quoting *Conrad v. ARA Szabo*, 198 W. Va. 362, 370, 480 S.E.2d 801, 809 (1996):

> In *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995), we cautioned circuit courts to be particularly careful in granting summary judgment in employment discrimination cases. Although we refuse to hold that simply because motive is involved that summary judgment is unavailable, the issue of discriminatory animus is generally a question of fact for the

13

In *Brown v. City of Montgomery*,[26] this Court discussed the impropriety of granting a 12(b)(6) motion to a public official who was defending a claim of wrongful discharge, and specifically reversed that circuit court's application of qualified immunity to the mayor in that case finding that "[*t*]*here is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive*."[27] In *Brown*, a police chief filed a lawsuit against the City of Montgomery and its Mayor alleging that he had been wrongfully discharged after refusing to retaliate against a fellow officer who filed a race discrimination claim.[28]

Similarly, in this case, Mr. Burke's amended complaint expressly includes claims based upon state and federal statutes, common law, and the public policy of this state, which a public official employer is deemed to know. Furthermore, Mr. Burke's amended complaint specifically alleges that Mr. Lemley's actions "were conducted in bad

---

> trier of fact, especially where a prima facie case exists. The issue does not become a question of law unless only one conclusion could be drawn from the record in the case. In an employment discrimination context, the employer must persuade the court that even if all of the inferences that could reasonably be drawn from the evidentiary materials of the record were viewed in the light most favorable to the employee, no reasonable jury could find for the plaintiff.

[26] 233 W. Va. 119, 755 S.E.2d 653 (2014).

[27] *Id.* at 129, 755 S.E.2d at 663 (quoting Syl., in part *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992) (emphasis added).

[28] *Id.* at 122-23, 755 S.E.2d at 656-57.

14

faith, fraudulent, malicious, reckless, intentional, wanton, willful and otherwise oppressive and did further violate the clearly established laws of which a reasonable official would have known." He also alleges facts that, if proven true, could lend themselves to a finding of such conduct. Thus, we find little difficulty in concluding that these allegations preclude application of qualified immunity in the context of a motion under Rule 12(b)(6).

## C. *Claims Asserted in the Amended Complaint*

When considering a motion to dismiss, a trial court must take as true all factual allegations contained in the pleading. Under Rule 12(b)(6), we consistently have held that a trial court's role is limited:

> All that the pleader is required to do is set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist. The trial court should not dismiss a complaint merely because it doubts the plaintiff will prevail in the action, and whether the plaintiff can prevail is a matter properly determined on the basis of proof and not merely on the pleadings.[29]:

"The policy of the rule is thus to decide cases upon their merits, and if the complaint states a claim upon which relief can be granted under any legal theory, a motion under Rule 12(b)(6) must be denied."[30] However, essential material facts must appear on the face of

---

[29] *Dunn v. Consolidation Coal Co.*, 180 W. Va. 681, 684, 379 S.E.2d 485, 488 (1989) (quoting *Mandolidis v. Elkins Industries, Inc.*, 161 W. Va. 695, 718, 246 S.E.2d 907, 920, citing Wright & Miller, *Federal Practice & Procedure: Civil* § 1216 (1969)).

[30] *John W. Lodge Distributing Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158-59 (1978) (citing *United States Fidelity & Guaranty Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965).

15

the complaint.[31]  The complaint must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist.[32]

As an initial matter, we note the inartful, "kitchen sink" manner of pleading demonstrated by Mr. Burke's amended complaint.  And, the confounding and over-reaching dismissal order, which was prepared by Respondents' counsel, fails to accurately identify and respond to each of the claims asserted.  Due to the confusing manner in which the claims in the amended complaint are asserted and organized, in addressing Mr. Burke's assignments of error, we will discuss each claim separately.[33]

### 1.    *West Virginia Human Rights Act Claims*

Mr. Burke's amended complaint appears to allege both a claim for unlawful discharge under the Human Rights Act (in Count III) and a claim for hostile work environment under the Human Rights Act (in Count I).  To the extent that both of these claims involve separate violations of the Human Rights Act, we will discuss each.

---

[31] *Fass v. Nowsco,* 177 W. Va. 50, 52, 350 S.E.2d 562, 563 (1986) (citing *Greschler v. Greschler*, 71 A.D.2d 322, 325 (N.Y. 1979)).

[32] *Fass*, 177 W. Va. at 52, 350 S.E.2d at 563 (citing *German v. Killeen*, 495 F.Supp. 822, 827 (E.D.Mich.1980); *see also Jenkins v. McKeithen*, 395 U.S. 411, 423-24 (1969); W. Va.R.Civ.P. 8(a)).

[33] For purposes of clarifying which claims that Mr. Burke has sufficiently asserted and discussing the merits of each, we will address Counts I through IV of the amended complaint out of order.

16

### a) *Unlawful Discharge Under the Human Rights Act*

Our law clearly makes it unlawful to discriminate or retaliate against individuals having a disability, or who are regarded by their employer as having a disability, in regard to the terms, conditions, or privileges of employment. The Human Rights Act declares it unlawful for an employer to "discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment[.]"[34] "Discrimination" means to "exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status[.]"[35]

We have held that:

> [i]n order to make a prima facie case of employment discrimination under the Human Rights Act, W. Va. Code § 5-11-1 *et seq.* (1979) a plaintiff must offer proof of the following: (1) that the plaintiff is a member of a protected class; (2) that the employer made an adverse decision concerning the plaintiff; (3) but for the plaintiff's protected status, the adverse decision would not have been made.[36]

---

[34] W. Va. Code § 5-11-9(1) (2017).

[35] W. Va. Code § 5–11–3(h) (2013).

[36] Syl. Pt. 3, *Conaway v. Eastern Assoc. Coal Corp.*, 178 W. Va. 164, 358 S.E.2d 423 (1986).

17

After a prima facie case has been made, "the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the [adverse employment action]."[37] If the presumption is rebutted, "then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination."[38]

> In *Stone v. St. Joseph's Hospital,*[39] this Court held:
>
> Under our Human Rights Act, W. Va. Code, 5–11–1 *et seq.*, a "person with a disability" within the meaning of the law means a person who has one or more physical or mental impairments that substantially limits one or more major life activities; a person who has one or more physical or mental impairments that does not substantially limit one or more major life activities, but that is treated by others as being such a limitation; a person who has one or more physical or mental impairments that substantially limits major life activities only as a result of the attitudes of others toward such impairment; *and a person who has no such impairments, but who is treated by others as having such impairments*.[40]

Furthermore, under the Human Rights Act regulations, with respect to an individual, "disability" means:

---

[37] *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n,,* 172 W. Va. 627, 637, 309 S.E.2d 342, 352 (1983).

[38] *Id.*

[39] 208 W. Va. 91, 538 S.E.2d 389 (2000).

[40] *Id.* at Syl. Pt. 3 (emphasis added); *see also* W. Va. Code § 5-11-3 (2013).

2.1.1. A mental or physical impairment which substantially limits one or more of a person's major life activities; or
2.1.2. A record of such impairment; or
2.1.3. *Perception of such an impairment.*[41]

The term "Is Regarded as Having an Impairment" means any of the following:

2.8.1. Has a physical or mental impairment that does not substantially limit major life activities but is treated by another as having such a limitation;
2.8.2. Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
2.8.3. Has none of the impairments defined above but is treated by another as having such an impairment.[42]

In his amended complaint, Mr. Burke alleged that he was suffering from a medical condition that was a disability, which entitled him to certain protections and rights under the law, and that he required surgery due to his medical condition and applied for and was granted leave in accordance with the FMLA. He asserts that prior to his medical leave and surgery, he was subjected to harassment from Mr. Lemley and the conduct continued following his surgery and his return from FMLA. Specifically, he contends that following his surgery, he was released to return to work without any limitations or restrictions. Although he was required to continue to take medication for pain which was monitored by his physician, he was released to engage in unrestricted daily activities including work and the operation of motorized vehicles. However, Mr. Lemley allegedly

---

[41] W. Va. C.S.R. §77-1-2.1 through -2.3 (2018) (emphasis added).

[42] W. Va. C.S.R §77-1-2.8 (2018).

19

refused to accept the medical release, requested additional medical releases, and admitted to Mr. Burke that he was the only employee who was treated that way.

Respondents contend, and the circuit court found, that to the extent that Mr. Burke received accommodation for his disability, the claims under the Human Rights Act were properly dismissed. However, a failure to accommodate is not the basis of Mr. Burke's claim. In Count III, Mr. Burke's complaint makes it clear that he claims discrimination, harassment and retaliation related to his disability, or being regarded by his employer of having such a disability, and these claims are not extinguished by the fact that Respondents provided Mr. Burke his requested FMLA leave. We therefore conclude that for the lenient pleading standard under Rule 12(b)(6), the facts alleged are sufficient to plead a claim for a Human Rights Act claim on the basis of being perceived or regarding as having a disability.[43]

### b) *Hostile Work Environment Under the Human Rights Act*

This Court has held that "[f]or a hostile work environment claim to be actionable, the offensive environment must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment."[44]

---

[43] *Stone*, 208 W. Va. 91, 538 S.E.2d 389.

[44] *Erps v. West Virginia Human Rights Commission*, 224 W. Va. 126, 134, 680 S.E.2d 371, 379 (2009) (quoting *In Garcez v. Freightliner Corp.*, 72 P.3d 78 (Or.App. 2003).

In establishing a claim for hostile work environment in the context of sexual harassment, this Court set forth the following test:

> To establish a claim for sexual harassment under the West Virginia Human Rights Act, W. Va. Code § 5–11–1, *et seq*., based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer.[45]

Although a number of our cases discussing hostile work environment claims have been in the context of sexual harassment, we have applied these same factors to hostile work environment claims arising from other forms of offensive conduct. For example, in applying this test in the context of an ancestral-based hostile work environment case, we held:

> While this Court has never addressed the elements for an ancestral-based hostile work environment case, the elements necessary to prove that case are the same as those required to prove sexual harassment, but for the distinguishing nature of the offensive conduct at issue. *See Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995)[.][46]

And, we held that:

> To establish a claim for ancestral discrimination, under the West Virginia Human Rights Act, West Virginia Code §§ 5-11-1 to -20 (1999) based upon a hostile or abusive work

---

[45] Syl. Pt. 5, *Hanlon*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

[46] *Fairmont Specialty Serv. v. W. Va. Human Rights Comm'n*, 206 W. Va. 86, 94, 522 S.E.2d 180, 188 (1999).

environment, a plaintiff-employee must prove that: (1) that the subject conduct was unwelcome; (2) it was based on the ancestry of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment; and (4) it was imputable on some factual basis to the employer.[47]

Thus, while this Court has never addressed the elements for a disability-based hostile work environment case, the elements necessary to prove that case would essentially be the same as those required to prove sexual harassment or ancestral discrimination, with the exception of the offensive conduct at issue.[48]

In this case, Mr. Burke's amended complaint states that he had medical conditions with regard to his back and a peanut allergy of which his employer was aware, and that Respondents engaged in repeated conduct that discriminated against him and harassed him because of these conditions. Specifically, he asserts that he was subjected to daily harassment by his supervisor in regard to remarks and intimidating treatment, changes in his working duties, and different treatment and privileges in his working environment as to him and other employees. Mr. Burke alleges that the conduct of Mr. Lemley created a hostile work environment that was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and created an abusive working environment. He further alleges that it was an environment that Mr. Burke found, and a reasonable person

---

[47] *Id.* at Syl. Pt. 2.

[48] *Fairmont Specialty Services,* 206 W. Va. at 94, 522 S.E.2d at 188.

would find, to be hostile and abusive.  Without question, we conclude that Mr. Burke has sufficiently pleaded a cause of action for hostile work environment for purposes of surviving a motion to dismiss under Rule 12(b)(6).

### 2. *Unlawful Discharge Under the FMLA*

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."[49]  Mr. Burke's amended complaint incorrectly alleges that "under the law and applicable policies, plaintiff was entitled to be restored by his employer to the position of employment he held prior to the commencement of the FMLA approved leave."  Under the FMLA, an employer must restore an employee to the same *or an equivalent position* with equivalent benefits, pay and other conditions of employment.[50]  Under the FMLA regulations, an equivalent position is "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status."[51]  The new position "must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort,

---

[49] 29 U.S.C. § 2615(a)(1).

[50] 29 U.S.C. § 2614(a)(1)(A), (B) (emphasis added).

[51] 29 C.F.R. § 825.215(a) (2018).

23

responsibility, and authority."[52]  However, the equivalency requirement does not extend to "de minimis or intangible, unmeasurable aspects of the job."[53]

Mr. Burke's amended complaint does not allege that Respondents failed to provide him with a position that was equivalent in terms of pay or benefits.  However, he alleges that Respondents failed to return him to the same conditions of employment including the pre-leave duties and privileges he previously had prior to seeking FMLA leave, by: (1) refusing to give him access to the county vehicle; (2) refusing to allow him to leave the office to perform appraisals, (3) refusing to return the keys necessary for him to access his prior work areas; (4) restricting him to a desk to perform clerical work for other appraisal deputies who were not previously his superior or authorized to give him work, and (5) refusing computer access making clerical work much more difficult.  The question of whether these changes in the conditions of his employment were de minimus in nature or significant enough to constitute a failure to return Mr. Burke to an equivalent job is necessarily one of fact.  We therefore conclude that Mr. Burke has sufficiently pleaded of cause of action under the FMLA for purposes of 12(b)(6).

---

[52] *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 723 (4th Cir. 2013).

[53] 29 C.F.R. § 825.215(f) (2018).

24

### 3. *Violation of Constitutional Rights*

In Count II of Mr. Burke's amended complaint, he alleges that Respondents discharged him for exercising his constitutional rights by filing to run and campaigning for the office of Wetzel County Assessor. The amended complaint also states that Respondents unreasonably impeded and interfered with his right to seek and campaign for the office of Assessor by engaging in and/or permitting the harassment and discrimination he complained of in retaliation for him running for office. He alleges that the actions of the Respondents denied him the rights, privileges and immunities secured by the West Virginia and United States Constitution, including the right to free expression and free association through his political activities and his right to equal protection.

In its dismissal order, the circuit court found that these claims failed as a matter of law because neither the Commission nor Mr. Lemley are state actors. The circuit court found the Tort Claims Act, (which the parties agree does not apply to employment claims), applies to this claim, as it alleges a violation of Mr. Burke's state constitutional rights to run for public office.[54] However, with respect to this claim, the circuit court has missed the forest for the trees. Contrary to the circuit court's determination, Mr. Burke

---

[54] *See Hutchison*, 198 W. Va. at 139, 479 S.E.2d at 649; West Virginia Code § 29-12A-4(b)(1) ("A political subdivision is not liable in damages in a civil action for injury, death, or loss to . . . property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function . . .").

contends, and we agree, that this claim is one of retaliatory discharge that arises from his employment and thus, the Tort Claims Act does not apply. Therefore, to the extent that Mr. Burke's amended complaint pleads a claim for retaliatory discharge in violation of his constitutional rights, rather than a stand-alone claim for a violation of his constitutional right to run for public office, we conclude that Count II is essentially repetitive of the retaliatory discharge claims asserted in Count I (discussed below) and is thus subsumed into Count I. Accordingly, we discuss the merits of this claim for retaliatory discharge in further detail below.

### 4. *Retaliatory Discharge Claim*

In the syllabus of *Harless v. First Nat'l Bank*, we held that at-will employment is not absolute:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.[55]

Mr. Burke's amended complaint states that the conduct of the Respondents was motivated by an intention to contravene the following substantial public policies of this state: (1) it is unlawful for public employers to use the power to hire and fire to dictate

---

[55] 162 W. Va. 116, 246 S.E.2d 270 (1978).

26

the terms of an employee's political activities, as public employees are protected from retaliation for exercising their Constitutional rights, which includes running for an elected office; (2) it is unlawful to discriminate or retaliate against an employee who suffers from a disability and/or who secures leave in accordance with the FMLA and the West Virginia Human Rights Act; and (3) it is unlawful to discriminate or retaliate against an employee for reporting acts of discrimination and/or harassment which are occurring in the workplace, or for objecting to unlawful and unreasonable gifts or advances by a supervisor.

Mr. Burke alleges that the circuit court erroneously failed to discuss the claim for retaliatory discharge, or the basis for its dismissal, and instead dismissed wholesale all claims set forth in Count I (and III, also discussed above) by summarily finding that the Respondents had not violated the Human Rights Act as they provided "a reasonable accommodation to Mr. Burke." We agree with Mr. Burke's contentions and conclude that the circuit court's analysis was inherently flawed, as it failed to explore Mr. Burke's retaliatory discharge claims with sufficient specificity in order to properly identify the public policies that he claims were violated. As Mr. Burke correctly contends, he claims harassment, discrimination and retaliation related to his disability, or as being regarded by his employer of having such a disability, which are not extinguished by providing a reasonable accommodation.

27

This Court has held that "[t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions."[56] "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person."[57] And,

> [t]he term "substantial public policy" implies that the policy principle will be clearly recognized simply because it is substantial. An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations.[58]

In *Feliciano v. 7–Eleven, Inc.*[59], this Court discussed four factors courts should weigh to determine "whether an employee has successfully presented a claim of relief for wrongful discharge in contravention of substantial public policy[.]"[60] The test requires the plaintiff to plead and prove the following elements:

> 1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

---

[56] Syl. Pt. 2, *Birthisel v. Tri–Cities Health Services Corp.*, 188 W. Va. 371, 424 S.E.2d 606 (1992).

[57] *Id.* at Syl. Pt. 3.

[58] *Id*. at 377, 424 S.E.2d at 612.

[59] 210 W. Va. 740, 559 S.E.2d 713 (2001).

[60] *Id*. at 745, 559 S.E.2d at 713.

28

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).[61]

This Court has also recently observed that "a *Harless*-based action requires more than simply raising the spectrum of a potentially governing law."[62] "The mere citation of a statutory provision is not sufficient to state a cause of action for retaliatory discharge without a showing that the discharge violated the public policy that the cited provision clearly mandates."[63]

The sources of the public policy at issue in this case are found in the West Virginia Constitution, the Human Rights Act, the FMLA, the Whistle-blower Law, and our jurisprudence. First, employers are prohibited from retaliating against public employees for their political activities or for exercising their constitutional rights to run for public

---

[61] *Id*. at 750, 559 S.E.2d at 724 (quoting *Godfredson v. Hess & Clark, Inc*., 173 F.3d 365 (6th Cir. 1999)).

[62] *Frohnapfel v. ArcelorMittal USA LLC*, 235 W. Va. 165, 170, 772 S.E.2d 350, 355 (2015).

[63] *Swears v. R.M. Roach & Sons, Inc.*, 225 W. Va. 699, 705, 696 S.E.2d 1, 7 (2010).

29

office.[64] This Court has held that public employees are protected from adverse employment consequences resulting from the exercise of their free speech rights, as well as other First Amendment Rights.[65]

With respect to pleading a claim for retaliatory discharge for an exercise of constitutional rights, this Court has held that:

> In a retaliatory discharge action, where the plaintiff claims that he or she was discharged for exercising his or her constitutional right(s), the burden is initially upon the plaintiff to show that the exercise of his or her constitutional right(s) was a substantial or a motivating factor for the discharge. The plaintiff need not show that the exercise of the constitutional right(s) was the only precipitating factor for the discharge. The employer may defeat the claim by showing that the employee would have been discharged even in the absence of the protected conduct.[66]

The circuit court erroneously relied on a memorandum decision of this Court, *Jack v. City of Wellsburg,*[67] for the proposition that employees of a political subdivision

---

[64] *See Tiernan*, 203 W. Va. at 135, 506 S.E.2d at 578 (holding that important public policy is implicated whenever the power to hire and fire is utilized to dictate the terms of the employee's political activities.).

[65] *See Orr v. Crowder*, 173 W. Va. 335, 343, 315 S.E.2d 593, 601 (1983) (observing that "public employees are entitled to be protected from firings, demotions and other adverse employment consequences resulting from the exercise of their free speech rights, as well as other First Amendment rights.").

[66] Syl. Pt. 3, *McClung v. Marion Cty. Comm'n*, 178 W. Va. 444, 360 S.E.2d 221 (1987).

[67] 2013 WL 5676825 (October 18, 2013).

are not afforded constitutional protection and are thus prohibited from pursuing a claim against their employer for violating their rights to engage in political activities. *Jack* stands for no such thing. In *Jack*, the issue of whether a governmental entity's employees have due process rights as a matter of law was neither central to, nor even explored in, that case. Rather, we affirmed the circuit court's grant of summary judgment to the City on the basis that the petitioner had failed to produce more than a scintilla of evidence sufficient for a jury to find in his favor because the record included repeated disciplinary actions against petitioner over a period of years, at least one of which the circuit court found was sufficient to justify immediate termination.[68]

Contrary to Respondents' assertions, this Court has previously recognized that federal and state constitutional protections extend to employees of political subdivisions. In *McClung*, a case where a county employee brought an action against his employer alleging a violation of state overtime wage statute, denial of procedural due process, and retaliatory discharge, we held that:

> A public officer or public employee, even one who serves at the will and pleasure of the appointing authority, may not be discharged in retribution for the exercise of a constitutionally protected right, unless a substantial governmental interest outweighs the public officer's or public employee's interest in exercising such right. *See Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708, 716–17 (1983); syl. pt. 2, *Woodruff v. Board of Trustees*, 173 W. Va. 604, 319 S.E.2d 372 (1984), and cases cited at 377; syl. pt. 3, *Orr v. Crowder*,

---

[68] *Id.* at *3.

173 W. Va. 335, 315 S.E.2d 593 (1983), cert. denied, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984). Stated succinctly, "[o]ur responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; ..." *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708, 720 (1983).[69]

In so finding, we concluded that:

[c]ertainly it is in contravention of substantial public policies for an employer to discharge an employee in retaliation for the employee's exercising his or her state constitutional rights to petition for redress of grievances (W. Va. Const. Art. III, § 16) and to seek access to the courts of this State (W. Va. Const. Art. III, § 17) by filing an action, pursuant to W. Va. Code, 21–5C–8 [1975], for overtime wages.[70]

Second, providing equal employment opportunity for employment regardless of a disability, or a perceived disability, constitutes a substantial public policy of this State.[71]   Likewise, the FMLA prohibits employers from discrimination associated with leave under the FMLA and prohibits employers from interfering with, restraining or

---

[69] *McClung*, 178 W. Va. at 450, 360 S.E.2d at 227.

[70] *Id.*; *see also Adkins v. Miller*, 187 W. Va. 774, 421 S.E.2d 682 (1992) (remanding case to determine whether discharge of twelve sheriff's office employees was in violation of employees' First Amendment rights under the United States and West Virginia Constitutions to be free from discharge for political activities).

[71] *See* West Virginia Code § 5-11-3(h); *Stone v. St. Joseph's Hosp.*, 208 W. Va. 91, 538 S.E.2d 389 (2000) (finding that under the Human Rights Act, an employee can pursue a claim when they are "perceived as" having a disability); *Roth v. DeFeliceCare, Inc.*, 226 W. Va. 214, 700 S.E.2d 183 (2010) (holding that plaintiff had both a viable Human Rights Act hostile workplace claim, and a viable common law retaliatory discharge claim, both arising from the same set of facts).

denying any rights provided under the FMLA.[72]  Lastly, it is the public policy of this State and otherwise unlawful to discriminate or retaliate against an employee for reporting acts of discrimination and/or harassment which are occurring in the workplace.[73]

Because our statutory law and jurisprudence clearly demonstrate the existence of a public policy with respect to each of the retaliatory discharge claims alleged by Mr. Burke, and because he has alleged sufficient facts that Respondents violated these public policies, we conclude that his retaliatory discharge claims were sufficiently pleaded for purposes of Rule 12(b)(6).

### 5.      *Violation of the Whistle-blower Law*

The Whistle-blower Law makes it unlawful for an employer to retaliate against an employee for making a good faith report of wrongdoing by his supervisor. Specifically, "no employer may discharge . . . an employee . . . because the employee, acting on his own volition, . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste."[74]

---

[72] 29 U.S.C. §§ 2614 and 2615; *see also Vandevander v. Verizon Wireless, LLC*, 149 F.Supp.3d 724 (2016) (finding that the FMLA provides a substantial public policy sufficient to support a common law claim for retaliatory discharge in violation of public policy, and holding that "[u]nder West Virginia law, if an individual has suffered discharge in violation of a substantial public policy of West Virginia, that individual has a common law retaliatory discharge claim, even if that individual also has statutory remedies.")

[73] W. Va. Code § 6C-1-3(a).

[74] W. Va. Code § 6C-1-3 (2015).

Mr. Burke argues that the circuit court erroneously dismissed this claim because it concluded that he failed to allege that the "wrongdoing" affected the interests of the public, and failed to allege that the Commission was the "appropriate authority" for his complaint. "Wrongdoing" is defined by the Whistle-blower Law as "a violation which is not of a merely technical or minimal nature of a *federal or state statute* or regulation, of a political subdivision or ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."[75] Respondents argue that our Whistle-blower Law is specifically designed to protect a public interest, and petitioner's personal grievances do not meet the statutory definition of "wrongdoing."

Here, Mr. Burke's alleged wrongdoing was Mr. Lemley's harassment, discrimination, and retaliation. His amended complaint alleges that Mr. Burke reported Mr. Lemley's conduct in accordance with applicable policies to the official within the county assessor's office and to the Commission and that following his reporting, the wrongdoing continued, ultimately resulting in his termination. He specifically alleges that "the reports of plaintiff were not merely technical or of a minimal nature but were violations of the statutes referenced herein and the substantial public policy of this state all of which are designed to protect the interests of the public."

---

[75] W. Va. Code § 6C-1-2(h) (2015) (emphasis added).

The plain language of the statute makes it clear that, in asserting a claim for a violation of our Whistle-blower Law, a plaintiff need not report a violation strictly designed to protect only the interests of the public or the employer. Pursuant to the definition of "wrongdoing," a plaintiff must simply allege "a violation which is not of a merely technical or minimal nature of a *federal or state statute or regulation*, of a *political subdivision or ordinance or regulation* or *of a code of conduct or ethics designed to protect the interest of the public or the employer*."[76] As stated above, Mr. Burke's amended complaint includes allegations that Respondents violated various state and federal statutes and that Mr. Burke reported that wrongdoing to the Commission. Thus, in construing the amended complaint in the light most favorable to Mr. Burke, we conclude that the circuit court's determination that Mr. Burke's allegations did not meet the statutory definition of "wrongdoing" was erroneous.

And, the circuit court's finding that Mr. Burke failed to allege that the Commission was the "appropriate authority" is likewise erroneous. As stated above, Mr. Burke properly pleaded that the Commission was his joint employer. West Virginia Code § 6C-1-3(a) provides that "no employer may discharge . . . an employee . . . because the

---

[76] *Id.* (emphasis added); *See Carper v. Kanawha Banking & Trust Co.*, 157 W. Va. 477, 517, 207 S.E.2d 897, 921 (1974) ("Recognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select.")

employee, acting on his own volition, . . . makes a good faith report or is about to report . . . to *the employer* <u>or</u> *appropriate authority* an instance of wrongdoing or waste."[77]  Mr. Burke's claims focus on discrimination and retaliation he alleges he was subject to following a September 15, 2015 letter that he sent to the Assessor's Office complaining of unlawful harassment and discrimination.  According to his allegations, the letter was directed to the designated official within that office, as well as the Commission.  Furthermore, the amended complaint states that Mr. Burke's subsequent negative employment evaluation dated June 9, 2016 (which Respondents rely on in justifying Mr. Burke's termination) set forth, among other things, the events that occurred in September 2015.  Therefore, we conclude that he has sufficiently pleaded a whistle-blower claim for purposes of surviving a Rule 12(b)(6) challenge.

## IV.  CONCLUSION

For all these reasons, we conclude that the circuit court erred in granting Respondent's motion to dismiss Mr. Burke's claims, and we reverse and remand to the circuit court for further proceedings as to those claims.

Reversed and remanded.

---

[77] *Id.* (emphasis added).

36