No. 20-0600  *State ex rel. Grant County Commission v. Judge Nelson, et al.*

**FILED**
**March 23, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WALKER, J., concurring in part, and dissenting in part.

The majority's opinion in this case correctly finds that the Grant County Commission (Commission) is immune from plaintiff Kimberly Linville's intentional tort claim of intentional infliction of emotional distress under the Governmental Tort Claims and Insurance Reform Act.[1]  But the majority's ruling granting the Commission extraordinary relief and dismissing it as a defendant in this case overlooks significant legal issues and this Court's precedent relating to her statutory causes of action.  So I respectfully dissent.

The heart of my concern is the sweeping way that my colleagues in the majority dispose of Ms. Linville's statutory causes of action.  As this Court stated in *Burke v. Wetzel County Commission*,[2] we should liberally construe Ms. Linville's complaint and take all her allegations as true when evaluating the Commission's motion to dismiss:

> The purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the sufficiency of the complaint.  A trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice.  Since the preference is to decide cases on their merits, courts presented with a motion to dismiss

---

[1] *See* W. Va. Code §§ 29-12A-1 through -18.

[2] 240 W. Va. 709, 815 S.E.2d 520 (2018).

1

for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true. Therefore, the trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[3]

Because West Virginia is a notice pleading jurisdiction, a plaintiff need only provide a basic legal and factual basis for her claims to put a defendant on fair notice of them.[4] This standard is reinforced by the policy that litigants should not be expected to win their cases on the pleadings, but rather, be given their day in court.

Ms. Linville filed this employment discrimination/retaliation lawsuit after she was terminated from her position as Chief Nursing Officer at Grant Memorial Hospital (Hospital), a position she held for fourteen years. She filed suit against the Commission, who owns the Hospital[5] and appoints its trustees,[6] the Hospital's Chief Executive Officer, Robert W. "Bob" Milvet, and the Board of Trustees of the Hospital's Trust Foundation. Ms. Linville's complaint includes four causes of action and various theories of recovery.

---

[3] *Id*. at 717, 815 S.E.2d at 528 (footnotes and quotation marks omitted).

[4] "Complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 776, 461 S.E.2d 516, 522 (1995).

[5] W. Va. Code § 7-3-14.

[6] W. Va. Code § 7-3-15.

Count I is a discrimination and retaliation claim under the Whistle-Blower Law.[7] Ms. Linville alleges that the defendants are employers within the meaning of that statute because they each are a "person supervising one or more employees, including the employee in question, a superior of that supervisor, or an agent of a public body." Count II is a claim under the Patient Safety Act.[8] While Ms. Linville alleges that the Hospital is a health care entity under the Patient Safety Act, she does not allege that the Commission fit that description. Instead, she alleges that the "Board and the Commission are liable for their own discriminatory and/or retaliatory actions and are vicariously liable for the actions of their employees and agent Milvet." Count III is a claim under the West Virginia Human Rights Act.[9] Ms. Linville alleges that "[e]ach of the defendants" are "persons"[10] and "employers"[11] under the Human Rights Act.[12] And Count IV is a common law intentional infliction of emotional distress count based on the conduct of the Hospital's CEO, Mr.

---

[7] W. Va. Code §§ 6C-1-3 through -8.

[8] W. Va. Code §§ 16-39-1 through -7.

[9] W. Va. Code § 5-11-1 through - 20.

[10] *See* W. Va. Code § 5-11-3(a) (defining "person" as "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons[.]").

[11] *See* W. Va. Code § 5-11-3(d) (defining "employer" as "the state, or any political subdivision thereof, and any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year: Provided, That such terms shall not be taken, understood or construed to include a private club[.]").

[12] Footnote added.

Milvet.  Ms. Linville alleges that she was retaliated against and terminated after she complained that Mr. Milvet's harassment and inappropriate treatment of other employees created a hostile working environment.  She also alleges that she made complaints to Mr. Milvet and the Hospital's Chief Financial Officer about bills not being paid that caused delays in the Hospital receiving necessary medical supplies for patients.

The Commission filed a motion to dismiss the complaint in its entirety and argued that it could not be liable to Ms. Linville under the Whistle-Blower Law or Human Rights Act because it was not her employer.  The Commission also argued that the Patient Safety Act claim was improperly asserted against it because it is not a health care entity.[13] The circuit court denied the motion and the Commission filed this petition for writ of prohibition and interlocutory appeal.

In granting extraordinary relief to the Commission on Ms. Linville's Whistle-Blower Law and Human Rights Act claims, the majority largely follows the Commission's arguments and holds that "as established by West Virginia Code sections 7-3-14 and 7-3-15, the Commission has no authority to make decisions regarding the Hospital's employees and, thus, is not the employer of Ms. Linville."  I do not see how the majority can make such far-reaching factual determinations about the status of the Commission as an

---

[13] The Commission also argued that it was immune from suit on Ms. Linville's claim against it for intentional infliction of emotional distress under the Governmental Tort Claims and Insurance Reform Act, W.Va. Code §§ 29-12A-1 through -18.  As noted above, I concur with the majority's conclusion on this issue.

4

employer (or not) in the context of a Rule 12(b)(6) motion — much less elevate them to a syllabus point.  It is unclear how much authority the Commission exerts on its Board of Trustees and/or the Hospital because the parties have not engaged in discovery.  So, dismissal of these two claims under Rule 12(b)(6) is not warranted if we liberally construe Ms. Linville's complaint and take her allegations as true.

Significantly, the Commission did not address Ms. Linville's allegation that it is a "person" as defined in the Human Rights Act in its Rule 12(b)(6) motion below or in its combined petition for writ of prohibition and interlocutory appeal before this Court. So, that allegation clearly survives the Commission's Rule 12(b)(6) motion.  Under the statute's plain terms, there is potential for liability for violations of the Human Rights Act for those not fitting the definition of employer.[14]  This is not to suggest that the term

---

[14] Of particular significance to this case is West Virginia Code § 5-11-9, which provides that it shall be an unlawful discriminatory practice:

> (7) For any *person*, *employer*, employment agency, labor organization, *owner*, real estate broker, real estate salesman or financial institution to:
>
> (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section;
>
> (B) Willfully obstruct or prevent any person from complying with the provisions of this article, or to resist, prevent, impede or interfere with the commission or any of its members or

5

"person" is all encompassing, but it is defined very broadly and does not exclude public entities.[15] The majority—apparently recognizing the Commission's oversight—relegates its discussion of this important distinction to a footnote.[16] But the majority's analysis is flawed.

First, the majority claims that Ms. Linville "waived" her allegation that the Commission is a "person" under the Human Rights Act because the "person" allegation was briefly mentioned in her complaint and not argued before this Court. The majority then cites authority for the proposition that "[a]ssignments of error that are not argued in

---

representatives in the performance of a duty under this article; or

(C) Engage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

(Emphasis added). In her complaint, Ms. Linville alleged that the Commission was both an "employer" and "person" under the meaning of the Act.

While Ms. Linville does not allege that the Commission was an "owner," under the meaning of the Act, the majority rightfully concludes that the Commission owns the Hospital under West Virginia Code § 7-3-14. So, Mrs. Linville should be permitted to amend her complaint to cure this pleading oversight. *See Perdue v. S.J. Groves and Sons Co.,* 152 W. Va. 222, 161 S.E.2d 250 (1968) (stating a trial court is vested with sound discretion in granting leave to amend pleadings in civil actions; leave to amend should be freely given when justice so requires).

[15] *See* W. Va. Code § 5-11-3(a).

[16] *See* majority opinion note 3.

the briefs on appeal may be deemed by this Court to be waived."[17]  As stated above, Ms. Linville certainly raised the issue as she pleaded that the Commission was a "person" under the Human Rights Act in her complaint.  When considering a motion to dismiss under Rule 12(b)(6), we construe the complaint as to do substantial justice, not just the brief of the movant.[18]  And the majority mischaracterizes the procedural posture of this case when it finds Ms. Linville could waive this allegation.  The circuit court ruled in her favor when it denied the Commission's motion to dismiss.  So, this Court is reviewing arguments raised in the Commission's petition for extraordinary relief; Ms. Linville did not appeal so she raised no assignments of error.  Because the Commission did not address all allegations fairly pleaded in the complaint, it was the party who waived the argument and Ms. Linville's cause of action survives its motion.

As explained above, this Court has the obligation to examine the allegations in Ms. Linville's complaint and determine whether she has stated a claim upon which relief can be granted.  As recently noted by this Court in *Doe v. Logan County Board of Education*,[19] "[t]he purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of

---

[17] Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981).

[18] The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint. *Burke*, 240 W.Va. 709 at 717, 815 S.E.2d at 528; *see e.g., Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003) ("[E]ven if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted.").

[19] 242 W. Va. 45, 829 S.E.2d 45 (2019).

7

Civil Procedure is to test the sufficiency of the complaint."[20]  When responding to the Commission's Rule 12(b)(6) motion, Ms. Linville has no burden of proof.  Rather, the burden is upon the Commission to prove that no legally cognizable claim for relief exists.[21]

And second, the majority, without seeking guidance from the parties, goes on to decide the issue that it specifically found was not before us, and confidently decrees that even if the Commission qualifies as a "person" under the Human Rights Act, "it is clear that the retaliation alleged . . . constitutes an intentional act from which a political subdivision is immune under the Tort Claims Act." [22]   But it is not appropriate for the majority to dispose of Ms. Linville's Human Rights Act claim this way.  Because the parties did not brief this issue, we have a complete lack of foundation for addressing it.

Finally, when addressing Ms. Linville's Whistle-Blower Act and Human Rights Act claims, the majority summarily concludes that the circuit court erred by finding that the Commission could be held vicariously liable for the conduct of the Hospital and Mr. Milvet by virtue of the fact that the Commission created and owns the Hospital, and has appointment power of the Hospital's Board of Trustees.  The majority finds that Ms. Linville cannot sustain a vicarious liability argument against the Commission because she

---

[20] *Id.* at 49, 829 S.E.2d at 49 (quotations and citation omitted).

[21] *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, No. 18-0984, 2020 WL 7223357, at *6 (W. Va. Nov. 20, 2020).

[22] *See* majority opinion note 3.

failed to put forth a prima facie showing that a principal-agent relationship existed between the Commission and the Board of Trustees and CEO. But "a party is not required to establish a *prima facie* case at the pleading stage."[23] "Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard[.]"[24]

Turning to Ms. Linville's Patient Safety Act claim, the majority devotes a little over a page to its analysis with little regard to what Ms. Linville pleaded in the complaint. The majority correctly states that the "Patient Safety Act was established to prohibit discrimination and retaliation against a health care worker who makes a 'good faith report, or [who are [sic]] about to report, verbally or in writing, to the health care entity or appropriate authority an instance of wrongdoing or waste."[25] And the majority abruptly concludes that because the Commission is not a health care entity as defined by statute,[26] the circuit court erred by denying the Commission's motion to dismiss this claim.

---

[23] *Mountaineer Fire & Rescue Equip.* at *8.

[24] *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).

[25] W. Va. Code § 16-39-4.

[26] *See* W. Va. Code § 16-39-3(6) (defining health care entity as "a health care facility, such as a hospital, clinic, nursing facility, or other provider of health care services.").

The majority fails to address the fact that Ms. Linville never alleged that the Commission was a health care entity to begin with. Instead, she alleged that the "Board and the Commission are liable for their own discriminatory and/or retaliatory actions and are vicariously liable for the actions of their employees and agent Milvet." So, when examining Ms. Linville's allegation, the majority should have addressed whether there was the potential for finding the Commission liable under the Patient Safety Act even though it is not a health care entity. And there is clear statutory authority to do so because the Patient Safety Act provides that "[a]ny health care worker who believes that he or she has been retaliated or discriminated against . . . may file a civil action . . . against the health care entity *and the person* believed to have violated" the Act.[27] The majority ignores this theory of Ms. Linville's case.

The point is that in reviewing a Rule 12(b)(6) motion, our inquiry is limited to whether Ms. Linville has put forth claims in her complaint that, if proven, are factually and legally sufficient to sustain a favorable judgment. As no real discovery has taken place, we look to Ms. Linville's complaint and resolve conflicts and inferences in the record in favor of her.[28] Even if we assume that the Commission is correct that it is not Ms.

---

[27] W. Va. Code § 16-39-6 (emphasis added). Unlike the Human Rights Act, the Patient Safety Act does not define the term "person."

[28] *See e.g., Camden-Clark Mem'l Hosp. Corp. v. Tuan Nguyen*, 240 W. Va. 76, 84, 807 S.E.2d 747, 755 (2017) (holding Physician sufficiently pleaded his causes of action under Patient Safety Act to survive a motion to dismiss made under Rule 12(b)(6). "Obviously, Physician must still develop sufficient facts in order to ultimately prevail on

Linville's "employer" or a "health care entity," she alleged viable legal theories in the complaint under which the Commission may still be held liable.

For these reasons, I dissent in part, and concur in part. I would not grant the Commission extraordinary relief from the circuit court's order denying its Rule 12(b)(6) motion on Ms. Linville's statutory causes of action under the Whistle-Blower Law, Human Rights Act, and Patient Safety Act. This Court should not intervene to disturb the circuit court's ruling and grant extraordinary relief merely because it doubts that Ms. Linville will ultimately prevail against the Commission, because this is neither the purpose nor function of Rule 12(b)(6). But I concur with the majority's opinion insofar as it concludes that the Commission is statutorily immune from suit for Ms. Linville's intentional tort claim.

_____

his claims, but it does not appear beyond doubt to the Court at this stage of the proceeding that he can prove no set of facts in support of his claims which would entitle him to relief.").

11